UNITED STATES, Appellant

v

GARY M. MEADE, Specialist Four, U. S. Army, Appellee

20 USCMA 510, 43 CMR 350

No. 23,592

April 16, 1971

*Captain Charles T. Frew, III,* argued the cause for Appellant, United States. With him on the brief were *Colonel David T. Bryant* and *Lieutenant Colonel Ronald M. Holdaway.*

*Captain Francis X. Gindhart* argued the cause for Appellee, Accused. With him on the brief were *Colonel George J. McCartin, Jr., Major Alan W. Cook, Captain Monte Engler,* and *Captain Paul C. Saunders.*

## Opinion of the Court

DARDEN, Judge:

In this case the Judge Advocate General of the Army has certified the question of whether the Court of Military Review was correct in holding that the military judge's failure to instruct on the voluntariness of the accused's out-of-court statement was prejudicially erroneous. Our decision turns on whether the defense counsel expressly waived the right of the accused to an instruction that the court must disregard the accused's out-of-court statement unless it determined beyond a reasonable doubt that the statement was voluntary.

On August 5, 1969, the appellee and the deceased, Private Michael J. Ryan, engaged in several fights, at least some of which were precipitated by the deceased. After the deceased won the last fight, he referred to a knife lying on the floor and said the appellee was lucky he kicked the knife from the deceased's hand. The appellee then borrowed a .22 caliber pistol from a Specialist Five Ferguson. The pistol was located in an automobile owned by a Specialist Five Elm that was then in the barracks parking lot. While in the parking lot to obtain the pistol, Meade testified he had Ferguson place two rounds of ammunition in the pistol's cylinder in such a position that the pistol would not fire until after the trigger had been pulled three or four times. The appellee stated to Specialist Ferguson that he did not intend to kill the deceased. When the appellee again met the deceased in the barracks, the latter said, "Let's do that again, it was fun." The appellee drew his pistol and pointed it at the deceased, who dared the appellee to shoot him. The appellee pulled the trigger several times as the hammer fell on empty chambers. Finally the pistol fired, inflicting a wound from which the deceased died. Immediately before the pistol fired the deceased said, "now, I am going to kill you." After the shooting the appellee walked from the barracks and later surrendered to military police.

A general court-martial convicted the appellee of unpremeditated murder and sentenced him to a dishonorable discharge, total forfeitures, confinement at hard labor for twenty years, and reduction to the lowest enlisted grade. After the convening authority approved, the Army Court of Military Review set aside the findings and sentence because of what it considered a deficiency in the military judge's instructions to the court.

In a pretrial interrogation the appellee gave a statement, the voluntariness of which was contested first in an Article 39(a), Uniform Code of Military Justice, 10 USC § 839, session. At this session the defense's principal contention against voluntariness was that when the appellee was informed he was suspected of murder and he inquired about the penalty for murder, he was indicating he desired counsel at that time. At the end of the Article 39(a) session, the judge ruled preliminarily that the statement was admissible and he stated:

". . . [T]his is a preliminary ruling, the same matter may again be developed before the court and if an issue is presented by the testimony developed before the court, I will then submit it to the court under appropriate instructions."

**511**

At the trial, when the Government questioned Agent Frink, Criminal Investigations Detachment, in open court about the events of the night of the shooting, the defense objected to the admission of the statement that Mr. Frink had taken. The military judge overruled the objection. Soon afterward, this exchange occurred in an out-of-court hearing:

"MJ: . . . Now with regard to the confession issue, there was an objection stated to the confession, but no further testimony or evidence adduced on that. The defense understands, of course, the same issue that was litigated in the Out-of-Court Hearing, the Article 39a Session, can be litigated before the court.

"DC: Yes, sir.

"MJ: It is not the intention of the defense to litigate that issue?

"IC: Not at this time, no.

"MJ: That concludes the Out-of-Court Hearing."

The trial and defense counsel later read to the court the deposition of Criminal Investigations Detachment Agent Anderson that contains specific references to the taking of the out-of-court statement.

As the last witness for the defense, individual defense counsel called the appellee to the stand. Although the appellee's testimony covered more than sixty pages in the record, it concentrated on the events leading up to the shooting and the shooting itself. He made only brief references to the circumstances of the taking of his out-of-court statement at the Criminal Investigations Detachment office after the shooting.

After the appellee finished testifying the military judge called a sidebar conference in which the following exchange was recorded:

"MJ: If I recall the accused's testimony correctly, he may have left the impression that after he had indicated that he wanted to see somebody who knew what this was all about at the time of the interview, there were further questions. Also his testimony, in his explanation as to what was told him, extended only to the fact that he had a right to a lawyer, that was not further developed. I'm asking at this time whether there is an issue for submission to the court or whether the defense is relying upon the ruling made in the Out-of-Court Hearing regarding the compliance with the *Miranda* warning and the Article 31 warnings?

"DC: Just a moment.

"(DC and IC confer.)

"IC: We rely on the Out-of-Court Hearing and not to submit it to the court.

"MJ: Then there's no issue now before the court on the statement?

"DC: The ruling's been made as far as we're concerned, that's the only ruling we're seeking."

During their final argument, both the appointed defense counsel and the individual defense counsel stressed the evidence in support of their strategy of self-defense. Neither counsel mentioned the voluntariness of the confession.

As appellate defense counsel view this case, the question is whether one can affirmatively waive an instruction on voluntariness after taking at least some steps to litigate disputed factual issues, and, if such a waiver is possible, whether it was accomplished here. Despite the obvious choice of both civilian and military defense counsel that the judge not submit the voluntariness issue to the court for determination, appellate defense counsel insist that the military judge could not rely on the statements of counsel but was obligated to give voluntariness instructions to the court, unless (1) the defense withdrew its objection made in open court to the admission of the confession and (2) the appellee recanted his testimony suggesting that the statement was taken from him in violation of his right to counsel.

Even before Jackson v Denno, 378 US 368, 12 L Ed 2d 908, 84 S Ct 1774 (1964), military procedure called for the military judge to determine the admissibility of a contested statement as a matter of law and for the judge to instruct the members of the court that they must disregard the statement unless they found beyond a reasonable doubt that it was voluntary. Paragraph 140a, Manual for Courts-Martial, United States, 1951. When the voluntariness of a pre-■■■■■ ■ trial statement is in issue, the Government must establish voluntariness beyond a reasonable doubt, "and when that issue or one relating to denial of counsel is submitted to a military jury, it should be so informed." United States v Odenweller, 13 USCMA 71, 75, 32 CMR 71 (1962). "[T]he question of the veracity of his claim [of denial of counsel] was one ultimately for the court members." *Id.*, at page 74.

When the voluntariness of a pretrial statement is in issue the responsibility for the judge to instruct ■■■■■ ■ on it is a *sua sponte* one that arises not from a defense request but from the existence of evidence raising the issue. United States v Howard, 18 USCMA 252, 39 CMR 252 (1969).

From the exchanges between the military judge and the civilian and military defense counsel quoted above, we are confident that in its trial strategy the defense counsel intentionally abandoned the voluntariness issue. This requires us to consider whether the voluntariness instruction could be waived without formally withdrawing the original objection in open court and without the appellee's retracting the part of his testimony that could be considered as a challenge of the voluntariness of his out-of-court statement.

In arguing that such an instruction can be waived appellate Government counsel urge two considerations. The first is that the record must demonstrate "an affirmative, calculated, and designed course of action by a defense counsel" to the end that he led the presiding military judge to believe he did not wish the instruction to be given. United States v Mundy, 2 USCMA 500, 503, 9 CMR 130 (1953); United States v Moore, 12 USCMA 696, 700, 31 CMR 282 (1962). The second consideration is that even when defense counsel makes an on-the-record attempt to waive a *sua sponte* instruction, the military judge must decide for himself whether the court would be unduly deprived of necessary instructional guidelines. See United States v Wilson, 7 USCMA 713, 23 CMR 177 (1957).

Our adoption of the appellee's arguments against waiver without certain retractions would unreasonably restrict defense counsel in his selection of strategy and, in the case under consideration, it could have prejudiced the accused. Here the available issues to the defense were (a) voluntariness and (b) self-defense. Trial defense counsel could reasonably have recognized that they had a frail issue of voluntariness and that without more evidence of involuntariness an instruction on this subject could have emphasized the frailty and have militated against the efficacy of a more promising self-defense issue. By withdrawing before the court his objection to the admission of the statement, and by retracting the part of appellee's testimony suggesting his out-of-court statement was involuntary, the trial defense could have discredited themselves with the members of the court, making them less likely to decide the self-defense issue for the appellee.

In reversing the findings, the Court of Military Review emphasized that the responsibility of the military judge for a voluntariness instruction was his alone and that he should not allow defense counsel to decide whether an issue had been raised. Paragraph 140a(2), Manual for Courts-Martial, United States, 1969 (Revised edition). We agree, but the military judge's words and actions here impress us as his recognition

**513**

that, without more evidence, defense had a weak issue of voluntariness and that this weakness could undercut the self-defense issue.

The Court of Military Review declined to affirm findings of guilt based on the evidence other than the out-of-court statement because of that court's doubt about the impact of the exculpatory material in the statement if the military judge had instructed trial members on the voluntariness question. This concern seems to assume that the court members disregarded exculpatory parts of the statement because they were not instructed they could consider the statement only if they found beyond a reasonable doubt that it was voluntary. In our view, however, the court members hardly were more likely to give the appellee the benefit of the exculpatory material after they were informed they must disregard his statement unless they were satisfied of its voluntariness beyond a reasonable doubt.

Since we are convinced that defense counsel waived the voluntariness instruction and that in the █ circumstances of this case the military judge properly acceded to the waiver, we answer the certified question in the negative. Accordingly, the decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for action not inconsistent with this opinion.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

The case is before us on the following certified issue:

Was the Court of Military Review correct in holding that the failure of the military judge to instruct on the issue of the voluntariness of the accused's out-of-court statement was prejudicial error?

At a hearing conducted by the military judge under Article 39(a), Uniform Code of Military Justice, 10 USC § 839, the voluntariness of a

pretrial statement, made by the accused to military interrogators, was contested. Contrary to the defense contention, the judge ruled that the statement would be admitted in evidence. In open court, defense counsel again objected to the admission of the statement. His objection was overruled. Thereafter, the military judge, in a side-bar conference, asked defense counsel:

". . . [W]hether there is an issue for submission to the court or whether the defense is relying upon the ruling made in the Out-of-Court Hearing regarding the compliance with the *Miranda* warning and the Article 31 warnings?

"DC: Just a moment.

"(DC and IC confer.)

"IC: We rely on the Out-of-Court Hearing and not to submit it to the court.

"MJ: Then there's no issue now before the court on the statement?

"DC: The ruling's been made as far as we're concerned, that's the only ruling we're seeking."

In its opinion in this case, the Court of Military Review unanimously declared:

"Our careful reading and review of the record of trial and of the commendable briefs of counsel, as well as our receiving the benefit of the excellent oral arguments presented, lead us to conclude that only a rehearing of this case will serve the interests of justice.

"We find no fault with the military judge's ruling in an Article 39 (a) session, denying appellant's 'motion to suppress' his pretrial statement and admitting such statement into evidence (Assigned Error I). However, because we do find that the question of the voluntariness of appellant's pretrial statement had been unquestionably put in issue in open court for the fact-finders—the members of the court—to determine, we believe the military judge erred

in requesting defense counsel's views on whether there was such an issue, and if so, whether they desired an instruction thereon. The law is clear and unequivocal that responsibility for determinations such as these in the circumstances of this case is for the military judge alone. If such an issue is raised, his is the duty sua sponte to instruct thereon. Paragraph 140a(2), Manual for Courts-Martial, United States, 1969 (Rev); see United States v Howard, 18 USCMA 252, 255, 39 CMR 252, 255 (1968). As a result, the fact-finders were left without legal guideposts to resolve an issue which reasonably might substantially affect the outcome of the case.

"Because of the vast amount of exculpatory matter contained in appellant's pretrial statement to the criminal investigators we are loathe to affirm the findings of guilt based upon other uncontroverted evidence of record for we know not what impact such exculpation might have upon other fact-finders, given proper guidance. Accordingly, in our opinion, a rehearing on the merits of the entire case is in the best interest of all concerned."

Voluntariness of a pretrial statement is a *question of fact* and like all factual questions must be proved beyond a reasonable doubt. United States v Westmore, 17 USCMA 406, 38 CMR 204 (1968). As my brothers note in their opinion, "[w]hen the voluntariness of a pretrial statement is in issue the responsibility for the judge to instruct on it is a *sua sponte* one that arises *not from a defense request but from the existence of evidence raising the issue.* United States v Howard, 18 USCMA 252, 39 CMR 252 (1969)." (Emphasis supplied.)

In the case at bar, it is patent that the members of the Court of Military Review *found as a fact* (Article 66(c), Code, supra, 10 USC § 866) that the question of the voluntariness of the accused's out-of-court statement was raised by the evidence. In a decidedly similar situation, this Court unanimously held in United States v Phifer, 18 USCMA 508, 510, 511, 40 CMR 220 (1969):

" '(W)e are bound by purely factual determinations of the board of review (United States v Judd, 10 USCMA 113, 27 CMR 187 [1959]; United States v Remele, 13 USCMA 617, 33 CMR 149 [1963]), *unless such conclusions are arbitrary and capricious, so as to amount to an abuse of discretion* (United States v Wheatley, 10 USCMA 537, 28 CMR 103 [1959]). . . .' (United States v Baldwin, 17 USCMA 72, 77, 37 CMR 336 [1967].) (Emphasis supplied.)

"In United States v Smith, 17 USCMA 427, 430, 38 CMR 225 [1968]—in response to a certified question involving a board of review's dismissal of a conviction because of a lack of speedy trial—the rule was put in this way:

'. . . (U)nder the particular circumstances of this case, the first certified issue is answered in the affirmative, for "Where the board of review decision is rooted solely in findings of fact and where there is a substantial basis for the board of review's action in favor of the accused—as there is in this case—we are not inclined to disturb its finding. Cf. United States v Moreno, 6 USCMA 388, 20 CMR 104 [1955]; United States v Hendon, 7 USCMA 429, 22 CMR 219 [1956]; United States v Wheatley, . . .; United States v Remele, . . . ." United States v Lamphere, 16 USCMA 580, 583, 37 CMR 200 [1967].'

"On the facts before us in this case, we cannot say that the board of review's factual interpretation is arbitrary and capricious. We, therefore, answer the certified question in the affirmative."

My brothers' holding in this case that "defense counsel waived the voluntariness instruction and that in the

**515**

circumstances of this case the military judge properly acceded to the waiver," is, in my opinion, misplaced. United States v Phifer, supra. Their finding is a direct repudiation of *Phifer*.

Since I do not believe that the Court of Military Review's factual interpretation is arbitrary or capricious, I would answer the certified question in the affirmative.