482

**UNITED STATES**

v.

**Airman Daniel J. JOURDAN, FR 386–56–8776 36th Munitions Maintenance Squadron United States Air Forces in Europe.**

**ACM 21743.\***

U. S. Air Force Court of Military Review.

31 March 1975.

Appellate counsel for the Accused: Colonel William E. Cordingly and Captain Kenneth R. Powers.

Appellate counsel for the United States: Colonel C. F. Bennett and Captain Frederick P. Waite.

### DECISION

SANDERS, Judge:

Tried by general court-martial, the accused was found guilty, contrary to his plea, of one offense of wrongful possession of marihuana, in violation of Air Force Regulation 30–19 and Article 92, 10 U.S.C. § 892,

\* Consult Table of Cases in Bound Volume by  Name of Accused for appellate history.

Uniform Code of Military Justice. He was sentenced to a bad conduct discharge, confinement at hard labor for five months, total forfeitures of pay and allowances and reduction to airman basic. The convening authority approved the sentence except that he reduced the amount of the forfeiture to a sum of $200.00 per month for five months. The place of confinement was designated as the 3320th Retraining Group, Lowry Air Force Base, Colorado for confinement and screening.

Our attention has been invited to nine assertions of error accompanying the accused's request for appellate representation. With the exception of the matter discussed below, we find that the errors urged are either adequately analyzed and resolved against the accused in the post-trial review or are lacking in merit and warrant no elaboration.

As a part of its case, the prosecution introduced into evidence oral statements made by the accused to Belgian authorities following his arrest. Defense counsel objected to the introduction of these statements claiming, inter alia, that they were involuntary. The statements were admitted into evidence by the military judge. Prior to the court deliberating on findings, defense counsel requested that the factual issue concerning voluntariness of the statements be submitted to the court through instructions by the military judge. The military judge refused the request and his instructions did not place the matter before the court members. Under the circumstances of this case, we find this to be error.

As to this issue, the evidence established that the accused was detained at approximately 11:00 p. m., 18 May 1974, by Belgian custom officials following a sequence of events that had linked the accused to a quantity of hashish found by a private citizen in a woods near the Belgium/German border. He was subsequently taken to a Belgian police station some four or five

miles from the border. Besides the accused and the Belgian authorities, Specialist Fourth Class McClung from the United States Army, 42nd Military Police Group (customs) was present at the police station and acted as an interpreter. The Belgian authorities started interrogation of the accused at approximately 1:00 a. m., 19 May 1974, and the session ended at approximately 5:00 a. m.

Specialist McClung was called as a defense witness at the trial. His description of the interrogation is as follows:

"At the beginning Jourdan stated that he did not want to make a statement except to give name, rank, serial number, etc., and requested an attorney. I then explained the situation to him as I understood the Belgian policeman to have explained it to me. I told Jourdan that Belgian law applied and that under Belgian law he had no right to an attorney prior to or during the interrogation. I further told him that he had to make a statement of some type and would be detained until he did."

He further told the accused that "upon making a statement to the police he would go before some type of magistrate and after seeing the magistrate he could talk to a lawyer." [1] He never told the accused he did not have to make a statement.

Lieutenant Michaux, District Commanding Officer of the Gendarmerie, Eupen, Belgium, testified that the accused was taken before a Belgian investigating judge during the afternoon of 19 May 1974. Lieutenant Michaux was present when the accused made a statement to the judge. Over defense objection, the military judge permitted Lieutenant Michaux to testify regarding the statements made by the accused to the investigating judge on 19 May. In essence, the accused admitted that the hashish that had been found and turned in was his and that he bought it in Antwerp for $700.00 from an unknown person.

1. During his testimony in an earlier Article 39(a) session, Specialist McClung stated that he was present when the accused made a statement to the Belgian police. However, the details of this statement were not brought out other than that the accused apparently described some of his activities on the night before he was picked up.

On 27 May 1974 Lieutenant Michaux interviewed the accused, pursuant to direction of the investigating judge, to get more details as to the accused's drug transaction. The military judge permitted Lieutenant Michaux to testify as to what the accused told him during the 27 May interview. Lieutenant Michaux also testified that the accused was given food and water between 18 May and 27 May, that he had been allowed to sleep, that he was not forced, beaten, or hurt in any way.

The accused did not exercise his right to give limited testimony on the matter of voluntariness.

The prosecution called a witness who was qualified as an expert in Belgian law. He stated that under Belgian law no warning of rights is required or customarily given although a suspect has a right to remain silent. He also testified that a suspect can be detained by the police for 24 hours before being taken before an investigating judge and that a suspect is not entitled to consult with an attorney until after a first hearing before the investigating judge. He further opined that to advise a suspect that he must either make a statement or be locked up indefinitely would not render a statement obtained involuntary. In the expert's opinion, if an individual is told that he must make a statement, the investigating judge would advise the suspect that he has been threatened by something illegal and that investigating judge would disregard the statement. However, the investigating judge would ask the suspect "this is what you said before, do you stand by it" and if the suspect said "yes" or tells the judge himself what happened, the statement would be voluntary.

After both prosecution and defense had rested their cases, an Article 39(a) session was held to discuss instructions to be given the court. Defense counsel requested instructions be given on the factual issue of voluntariness of the statements. The prosecution opposed any such instruction. It is apparent that the prosecution's position was twofold. First, since the statements were taken by foreign authorities, and therefore foreign law applied, voluntariness was an interlocutory matter that could not be presented to the court members. Secondly, the prosecution urged that the question of voluntariness, as a matter of fact, had not been raised. The military judge refused to give the requested instruction; rather, he instructed the court as follows:

"There is evidence before the court that tends to establish that on 19 May 1974 and on 27 May 1974, the accused made certain oral statements to the Belgian civil authorities regarding alleged offenses of disobeying a general regulation by possessing marihuana. The court is advised that I have determined, as a matter of law, that those statements are admissible in evidence. Accordingly, the court may consider those statements along with all the other evidence in the case, and give them such weight as the court deems appropriate."

Article 31(d), Uniform Code of Military Justice, provides: "No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial."

Paragraph 140a(2), Manual for Courts-Martial, 1969 (Revised edition) in elaborating on the matter of voluntariness provides as follows:

"To be admissible against him, a confession or admission of the accused must be voluntary. A confession or admission which was obtained through the use of coercion, unlawful influence, or unlawful inducement is not voluntary."

. . . . .

"Some instances of coercion, unlawful influences, and unlawful inducement in obtaining a confession or admission are:"

. . . . .

"Imposition of confinement, or deprivation of privileges or necessities, because a statement was not made by the accused, or threats thereof if a statement is not made by him."

■ The initial question of whether to admit a confession or admission is for the military judge. However, once he has done so, and the question of voluntariness is placed in issue by the evidence in open court, the military judge must submit the matter to the court, under proper instruction. *United States v. Meade*, 20 U.S.C. M.A. 510, 43 C.M.R. 350 (1971); *United States v. Westmore*, 17 U.S.C.M.A. 406, 38 C.M.R. 204 (1968); *United States v. Gorko*, 12 U.S.C.M.A. 624, 31 C.M.R. 210 (1962); *United States v. Acfalle*, 12 U.S.C.M.A. 465, 31 C.M.R. 51 (1961); paragraph 140a(2), Manual, supra.

■ Although the statements in question were taken by foreign authorities acting on their own, such does not alter the fact that the standard for measuring voluntariness is controlled by the provisions of Article 31(d), Code, supra, and not by foreign law. As the Court of Military Appeals noted in *United States v. Dial*, 9 U.S.C.M.A. 700, 26 C.M.R. 480 (1958):

". . . nor need we decide whether the instant confession would, in fact, have been inadmissible in the Texas court. Military courts may convene in all States and foreign countries, and we are not disposed to have military law vary according to the laws of each jurisdiction." (26 C.M.R. at 483)

The court went on to observe that Article 31, Code, supra, "can be applied equally in all jurisdictions, and we prefer not to warp its provisions to comply with local law."

Certainly, the language of the Code, supra, and Manual, supra, does not suggest that a different or lesser standard applies or that voluntariness becomes purely an interlocutory matter for the military judge's determination because a confession or admission is taken in a foreign jurisdiction by foreign authorities. If such were the case, it would not be difficult to envision circumstances where a particular foreign standard would be repugnant to the principles of military justice.

■ Although the requirement for warning a suspect of his rights under Article 31,

Code, supra, is altered when confessions or admissions are taken by foreign authorities, the court decisions concerned with this issue note that where statements were received in evidence they were either voluntary or the factual issue of voluntariness was properly submitted to the court members. *United States v. Swift*, 17 U.S.C.M.A. 227, 38 C.M.R. 25 (1967); *United States v. Plante*, 13 U.S.C.M.A. 266, 32 C.M.R. 266 (1962); *United States v. Grisham*, 4 U.S.C. M.A. 694, 16 C.M.R. 268 (1954); *United States v. Walker*, 42 C.M.R. 973 (AFCMR 1970), pet. denied, 42 C.M.R. 356; *United States v. Hall*, 25 C.M.R. 874 (AFBR 1958), pet. denied, 26 C.M.R. 516. Accord, *United States v. Waldrop*, 41 C.M.R. 907 (AFCMR 1969), pet. denied, 41 C.M.R. 403.

Did the evidence before this court sufficiently raise a factual issue as to voluntariness of the statements? We believe that it did and that the military judge erred in not submitting the matter to the court under proper instructions.

■ In our opinion, the testimony of Specialist McClung sufficiently raised a factual issue for the court as to whether the accused's statements were the product of coercion or unlawful influence when his statements followed, later the same day, the advice that "he had to make a statement of some type and would be detained until he did." Advice that a suspect must make a statement is violative of Article 31(d), Code, supra. *United States v. Sporl*, 15 C.M.R. 759 (AFBR 1954). Likewise it has been held that a threat to a suspect that if he refused to make a statement he would be turned over to other authorities who would "get it out of him" is contrary to Article 31, Code, *supra*. *United States v. Jones*, 22 C.M.R. 494 (ABR 1956). Further, we are unable to conclude from the scant evidence before the Court on this matter that the connection between this advice and the subsequent statement was so attenuated as to remove a substantial question as to the voluntariness of the statement. *United States v. Caliendo*, 13 U.S.C.M.A. 405, 32 C.M.R. 405 (1962).

As we view the evidence, the advice given the accused through Specialist McClung balanced against the testimony of Lieutenant Michaux as to the treatment received by the accused and the fact that he made admissions to a judicial officer later the same day, a factual issue was sufficiently raised to require submission of the issue to the court. Further, the voluntariness issue remained as to the second statement made some eight days following the first. Whether the second statement was free from the taint of the initial statement, if in fact the initial statement was so tainted, was also a question of fact for the court's determination. *United States v. Wimberley*, 16 U.S.C.M.A. 3, 36 C.M.R. 159 (1966); *United States v. Caliendo, supra*; *United States v. Spero*, 8 U.S.C.M.A. 110, 23 C.M.R. 334 (1957); *United States v. Bennett*, 7 U.S.C.M.A. 97, 21 C.M.R. 223 (1956).

For the reasons stated, the findings of guilty and the sentence are set aside. A rehearing may be ordered.

FORAY, Judge, concurs.

ROBERTS, Senior Judge (dissenting):

· I agree, generally, with the principles of law upon which the majority rely. Specifically, I concur in their conclusion that the advice that the accused was required to make a statement to the Belgian investigators and would be detained until he did was coercive *per se*, and I concur that Article 31(d) of the Uniform Code of Military Justice would prohibit the admission of any statement made pursuant to that advice, notwithstanding any contrary provisions of Belgian law. The majority is also unquestionably right in saying the prosecution must prove the voluntariness of any statement it offers and that a doubt as to voluntariness can be raised without testimony

from the accused. *United States v. DeChamplain*, 22 U.S.C.M.A. 150, 46 C.M.R. 150 (1973). The issue that divides us is narrow. I simply find no nexus between the coercive advice given and the statement introduced by the prosecution. Accordingly, I must dissent from the decision of the Court and record my view that the military judge correctly ruled the evidence did not raise an issue of voluntariness and, hence, instructions on the subject were not required.

There is nothing in the evidence, that I can find, which suggests the coercive advice produced any statement at all. The advice complained of was, after all, an assertion that the accused would have to make a statement to the criminal investigators who then had him in custody; yet, one would infer from the evidence before the court members that the accused did not make a statement to the investigators.[2] Although the evidence of voluntariness was fragmentally presented, the fact clearly shown to the members was that several hours after the advice the accused was brought before an impartial Belgian judicial official in another city, and while there, and free from any police domination, the accused confessed, not to the investigators, but to the magistrate. Surely, the circumstances thus shown by the prosecution established voluntariness in the usual sense. *United States v. Grisham*, 4 U.S.C.M.A. 694, 16 C.M.R. 268 (1954); *United States v. Vogel*, 18 U.S.C.M.A. 160, 39 C.M.R. 160 (1969). In my view, the earlier coercive advice is not related either logically or factually to the accused's later confession. Nothing presented to the members diminished the showing of voluntariness or even remotely tended to show any connection between the in-court confession to the magistrate and the earlier, improper, advice given by a different per-

---

**2.** Exhibits in the Article 32 investigation report show that the accused did make a statement to the investigators, but it was largely exculpatory. Upon his initial appearance before the *magistrate*, the accused continued to deny any connection with the marihuana which had been found. After the accused was excused, his companion, who had been apprehended at the

same time as the accused, was called before the magistrate and made a statement that implicated the accused. The accused was brought back in, and when confronted with the companion's assertions, he confessed. These facts, of course, have no relevance to the issue before the Court, and are mentioned only for the information of the reader.

son related to an interrogation by someone else. Accordingly, there was no factual issue to be resolved by the members of the court-martial, and no need for instructions regarding voluntariness. *United States v. Vogel, supra*; *United States v. Sikorski*, 21 U.S.C.M.A. 345, 45 C.M.R. 119 (1972); *United States v. Foecking*, 22 U.S.C.M.A. 46, 46 C.M.R. 46 (1972). I would affirm the findings and the sentence.

TO THE HONORABLE, THE JUDGES
OF THE UNITED STATES COURT
OF MILITARY APPEALS:

1. Pursuant to the Uniform Code of Military Justice, Article 67(b)(2), the record of trial and the decision of the United States Air Force Court of Military Review, in the above-entitled case, are forwarded for review.

2. The accused was tried by General Court-Martial convened at Bitburg Air Base, Germany, on 16 and 17 October 1974, and despite his plea of guilty was convicted of a single specification of violation of an Air Force general regulation by having in his possession in excess of 2600 grams of marihuana, in violation of Article 92, Uniform Code of Military Justice. He was sentenced to be discharged from the service with a bad conduct discharge, to forfeit all pay and allowances, to be confined at hard labor for five months, and to be reduced to the grade of airman basic. The convening authority approved the sentence on 2 December 1974, except that he reduced the amount of forfeiture to $200 per month for five months. The Court of Military Review on 31 March 1975 set aside the findings and sentence, permitting a rehearing to be ordered; one appellate military judge of the panel of three dissented. This decision was received by The Judge Advocate General on 31 March 1975.

3. It is requested that action be taken with respect to the following issue:

"WAS THE COURT OF MILITARY REVIEW CORRECT IN HOLDING THAT THE MILITARY JUDGE ERRED IN REFUSING THE DEFENSE REQUEST TO PLACE BEFORE THE COURT MEMBERS THE ISSUE OF THE VOLUNTARINESS OF THE ACCUSED'S ORAL STATEMENTS TO THE BELGIAN AUTHORITIES?"
HAROLD R. VAGUE
Major General, USAF
The Judge Advocate General
United States Air Force