**UNITED STATES, Appellee,**

v.

**Private E2 Richard T. MILLER,
570–51–4221, United States
Army, Appellant.**

**ACMR 8702683.**

U.S. Army Court of Military Review.

24 July 1989.

For Appellant: Luther C. West, Esquire (argued); Captain Wayne D. Lambert, JAGC (on brief).

For Appellee: Captain Jody M. Prescott, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Martin D. Carpenter, JAGC (on brief).

* Judge Michael B. Kennett took final action on this case prior to his reassignment.

1. Although the appellant did not specifically assert the voluntariness of his confession as an assignment of error, his argument includes a contention that his confession was not voluntary.

Before DeFORD, KANE, and KENNETT *, Appellate Military Judges.

## OPINION OF THE COURT

KANE, Judge:

Contrary to his pleas, the appellant was convicted of premeditated murder and rape, violations of Articles 118 and 120 of the Uniform Code of Military Justice, 10 U.S.C. §§ 918 and 920 (1982). His approved sentence includes a dishonorable discharge, confinement for life, forfeiture of all pay and allowances, and reduction to Private E1.

On appeal, the appellant assigns a number of errors. The appellant first contends that the military judge committed prejudicial error in failing to give *sua sponte* an instruction on the voluntariness of the confession. Second, the appellant contends that the evidence is insufficient to prove that he was the perpetrator of the charged offenses. Finally, in a combined argument, the appellant contends that the military judge erred in failing to make a specific finding whether his confession was voluntary or involuntary, that his waiver of rights was involuntary, and that his confession was involuntary.[1] We disagree and affirm.

## STATEMENT OF FACTS

On 11 August 1987, sometime between the hour of midnight and 0100 hours, SPC Emma Jean Kumre was raped and stabbed to death in a messhall where she was working alone. The appellant was identified as a suspect and apprehended at approximately 0630 hours that same day. At 1201 hours, the appellant, after being advised of his rights, waived his right to counsel and his right to remain silent and agreed to discuss Kumre's rape and murder.

The appellant told the investigator that on the previous day he had "decided to get drunk" because of a delay in his port call. During the interview, the appellant admit-

ted that he had also used prohibited drugs on the day when Kumre was murdered. According to the appellant, he had taken three "hits" of lysergic acid diethylamide [LSD][2], consumed approximately twelve beers, and smoked "20 Deutsche Marks worth" of hashish. The appellant initially claimed to have blacked out during the afternoon prior to the murder and insisted that he had no recollection of the events of the previous night. However, as the interview continued, the appellant confessed to the offenses of which he has been convicted.

At trial, the parties stipulated to the following facts concerning the appellant's drug use on the day of the murder:

At approximately 1300 hours on 10 August 1987, the [appellant] ingested by swallowing at least one and possibly two tablets (each a normal dosage unit) of lysergic acid diethylamide (LSD). At approximately 2000 hours on 10 August 1987, the [appellant] ingested by swallowing yet another tablet (also a normal dosage unit) of LSD.

At approximately 1100 hours on 11 August 1987, the accused provided urine and blood samples to Special Agent Reginald A. Thompson, CID, at 97th General Hospital in Frankfurt, FRG. Proper forensic testing of these body fluid samples confirmed the presence of LSD in both the accused's urine and blood.

The appellant neither moved to suppress his confession nor objected to its admission into evidence at the time it was offered.

During presentation of the defense case on the merits, the appellant offered the testimony of Dr. Charles Stratham, an Army toxicologist, who testified that an individual who tested positive for LSD in the blood or urine "would be experiencing the effects of LSD" at the time that he was tested and that, based on the results of appellant's blood test, the effects or influence of the LSD on the appellant would have continued for five hours and perhaps

as many as eighteen hours after testing. The toxicologist testified that the appellant would have still been under the effects of LSD between 1400 hours and 1700 hours on 11 August. The toxicologist also testified to the levels of ethanol and of tetrahydrocannibinol[3] (THC) metabolites in the appellant's blood and urine.

The defense next called Lieutenant Colonel (LTC) Franklin P. Brooks, Chief of Psychology Service, Department of Psychology, 97th General [Army] Hospital. Qualified as an expert in psychology, LTC Brooks testified that he had examined the appellant and that the appellant's personality structure was one "amenable to suggestibility." LTC Brooks also opined that the consumption of LSD enhanced an individual's "suggestibility." On examination by the court, LTC Brooks testified that consumption of alcohol, LSD, and hashish would have enhanced the appellant's susceptibility to suggestion.

The military judge, acting *sua sponte*, expanded the scope of inquiry and questioned LTC Brooks concerning the appellant's waiver of rights:

Q. Assuming that [the appellant], on the [10th] of August, ingested the substances that are indicated in Defense Exhibit A—that's an exhibit containing the reference to three LSD injestations [sic] —assuming that he ingested those substances at the time indicated, and was subsequently interviewed at 1200 hours on the 11th, would he be able to understand a rights advisal, which began "You are suspected of committing the offense of murder, rape and possession of illicit substances," followed by, "You have a right to have an attorney; you have right [sic] to terminate this interview at any time and consult with an attorney; you have a right to terminate this interview at will; anything you say may be used against you in a court-martial; do you

---

2. LSD is an illicit hallucinogenic. Because the drug is illicitly manufactured, the potency of any particular user unit of the drug varies. The effects of this drug are also varied by the physiology of user.

3. Tetrahydrocannibinol is the psychoactive chemical component of marijuana and hashish.

understand your rights? Do you want to have a lawyer present?"

Do you think that, given what you know about the effects of LSD, alcohol, marijuana, and [the appellant], do you think that, under those circumstances, he would have understood those rights?

A. No, sir.

Despite this testimony, the appellant made no motion for reconsideration of the ruling admitting the confession into evidence.

The theory of the case presented by the defense was that the appellant did not have the opportunity to commit the murder. Counsel established "sightings" of the appellant at various times off the installation and established the time of his departure from the installation. The defense argued that, while SPC Kumre had indeed been raped and murdered, the appellant was not on the installation at the time of the murder and thus could not be the perpetrator. Relying on the expert testimony noted above, the defense counsel explained away appellant's confession as the product of the appellant's suggestibility and use of drugs.

The government's case consisted of testimony by an eyewitness that he had seen the appellant dressed in Army issue Battle Dress Uniform (BDU's) and covered with blood standing outside the messhall where the murder occurred at the approximate time of the murder. The government also introduced a set of the appellant's BDU's which were blood stained. Although SPC Kumre and the appellant shared the same blood type, a forensic pathologist testified that the blood on the appellant's uniform was that of the victim and not the appellant. Finally, the individual characteristics of certain wounds as related in the appel-

lant's confession, facts unknown to the investigators at the time they interviewed the appellant, were later corroborated by forensic examination.

The appellant's argument regarding sufficiency of the evidence highlights certain conflicts in evidence and emphasizes the circumstances of the appellant's confession. It is wholly unpersuasive and does not warrant further discussion or analysis. The appellant's remaining assignments of error mount a broadside attack against the military judge's ruling admitting the appellant's confession. These issues warrant further discussion.

I

■ The appellant, relying on *United States v. Graves*, 1 M.J. 50 (C.M.A.1975), argues that the military judge erred in failing to *sua sponte* instruct the members that:

[E]ach member of the court, in connection with his deliberation upon the findings of guilt or innocence, should consider the evidence regarding the circumstances under which the statement was obtained with a view to determining whether the statement was voluntary and must disregard the statement entirely as evidence against the accused if he is not convinced beyond a reasonable doubt that it was voluntary.

*United States v. Graves*, 1 M.J. at 52. The requirement for this procedural instruction was based on the Manual for Courts–Martial, United States, 1969 (Rev.), paragraph 140a(2).[4] *Id. See also United States v. Meade*, 43 C.M.R. 350, 353 (C.M.A.1971). In promulgating this paragraph, the President rejected the "orthodox rule"[5] and

---

4. The standard to be applied, that of beyond-reasonable-doubt, was later established by the United States Court of Military Appeals in *United States v. Odenweller*, 32 C.M.R. 71 (C.M.A.1962). *United States v. Meade*, 43 C.M.R. at 353. *Cf. United States v. Sanchez*, 29 C.M.R. 32, 36 (1960) (the court declined to decide whether the "court-martial" should find voluntariness by a preponderance of the evidence or beyond a reasonable doubt).

5. Unlike the Massachusetts rule, the orthodox rule does not provide for independent relitigation of the issue of voluntariness before the

jury for purposes of "admissibility." *Jackson v. Denno*, 378 U.S. 368, at 378 n. 8, 84 S.Ct. 1774, at 1781 n. 8, 12 L.Ed.2d 908 (1964). Rather, this determination is reserved exclusively to the trial judge. *Id.* at 378, 84 S.Ct. at 1781. Thus, the military judge's ruling on admissibility is final and the members are to consider the confession in determining guilt or innocence. Nevertheless, an accused may, at trial, argue that his confession was involuntary in order to raise a doubt in the minds of the jurors as to its credibility and reliability. *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986).

adopted the so-called "Massachusetts rule" of procedure concerning confessions.[6] *United States v. Clark,* 7 M.J. 178, 181 & n. 1 (C.M.A.1979) (Perry, J., dissenting). These procedural rules control the admissibility and use of confessions. *Jackson v. Denno,* 378 U.S. at 378, 84 S.Ct. at 1781. *Accord United States v. Wheeler,* 22 M.J. 76, 78 n. 3 (C.M.A.1986) (citing Mil.R.Evid. 304(e)(2)). Both satisfy the requirements of due process. *See Jackson v. Denno,* 378 U.S. at 378, 84 S.Ct. at 1781. Because this matter is procedural in nature, the President has authority to establish the procedure to be utilized at courts-martial and to effect changes in this procedure. Article 36, UCMJ, 10 U.S.C. § 836.[7]

When the President adopted Military Rule of Evidence 304, he amended the procedure at courts-martial to conform with the orthodox rule. Mil.R.Evid. 304 (as amended by Executive Order 12189, 12 March 1980).[8] *See United States v. Wheeler,* 22 M.J. 76, 78 n. 3 (C.M.A.1986). Thus, the procedural requirement upon which the *Graves* decision was premised has been superseded; the issue of admissibility is no longer one for determination by the members. *United States v. Wheeler,* 22 M.J. 76, 78 n. 3 (C.M.A.1986) (citing Mil.R.Evid. 304(e)(2)). Accordingly, appellant's reliance upon *Graves* is misplaced and the assignment of error is without merit.

## II

▮ The appellant also contends that the military judge erred in failing to *sua sponte* rule on the voluntariness of the confession. Relying on the decisions of the Supreme Court in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967), he contends that "the trial judge's determination that the confession was voluntary must appear with 'unmistakable clarity' in the record." Although this is a correct statement of the law, it is not applicable to the case at bar.

*Denno* established a due process requirement that evidentiary conflicts on the voluntariness of a confession offered into evidence be reliably resolved by a fact-finder independent of the jury passing on the ultimate issue of guilt. *Id.,* 378 U.S. at 392, 84 S.Ct. at 1792. *Accord Sims v. Georgia,* 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967). Thus, "a jury [may] not hear a confession unless and until the trial judge or some other independent decision maker has determined that it was freely and voluntarily given." *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 2145, 90 L.Ed.2d 636 (1986). In both *Denno* and *Sims,* the defendants had challenged the voluntariness of their confession at trial and had offered evidence supporting their

---

This challenge affects only the weight, if any, to be accorded the confession and not whether the jury may consider it in deliberations.

**6.** Under the Massachusetts rule, the trial judge makes an initial determination of voluntariness as required by *Jackson v. Denno.* *See Lego v. Twomey,* 404 U.S. 477, 484 n. 9, 92 S.Ct. 619, 624 n. 9, 30 L.Ed.2d 618 (1972) (citing *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), for the proposition that due process requires an independent finding of voluntariness before any confession is admitted into evidence for consideration by a jury). Once the confession is found voluntary *as a matter of law* and admitted into evidence, the jury then reconsiders the issue of voluntariness. *Jackson v. Denno,* 378 U.S. at 378 n. 8, 84 S.Ct. at 1781 n. 8. If they find that the confession was voluntary, they may consider it and attribute to it such weight as they deem warranted; if they find that the confession was involuntary, the Massachusetts rule requires them to disregard the

confession completely in their determination of guilt or innocence. *Id.*

**7.** Article 36(a), UCMJ, provides in part:

Pretrial, trial, and post-trial procedures, including modes of proof ... may be prescribed by the President by regulations.

**8.** Military Rule of Evidence 304 provides in pertinent part:

The military judge must find by a preponderance of the evidence that a statement by the accused was made voluntarily before it may be received into evidence.

.     .     .     .     .

If a statement is admitted into evidence, the military judge shall permit the defense to present relevant evidence with respect to the voluntariness of the statement and shall instruct the members to give such weight to the statement as it deserves under all the circumstances.

Mil.R.Evid. 304(e).

contention that their confessions were involuntary.

Military Rule of Evidence 304 requires that motions to suppress or objections to the admission of confession "shall be made by the defense prior to submission of a plea." Mil.R.Evid. 304(d)(2)(A). That same rule further provides that a failure to raise the issue at the designated time will foreclose the issue unless the accused can demonstrate good cause for his failure to assert the issue at the appropriate time. *Id.* A failure to raise the issue at trial constitutes waiver. *Id.* In *Wainwright v. Sykes*, the Supreme Court reviewed Florida's version of this "contemporaneous-objection rule." *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The Court concluded that procedural waiver rules such as Rule 304(d)(2) pass constitutional muster: *"Language in subsequent decisions of this Court has reaffirmed the view that the Constitution does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession." Id.* at 86, 97 S.Ct. at 2506.

The appellant neither moved to suppress his confession prior to trial, nor objected to the admission of the confession, nor challenged the sufficiency of the evidentiary foundation which tended to establish the voluntariness of his waiver of rights and his confession. The waiver provision of the Military Rules of Evidence may be avoided only by a showing of "cause and prejudice." *Wainwright v. Sykes*, 433 U.S. at 86, 97 S.Ct. at 2506. The appellant in the case at bar has asserted no cause for his failure to raise the issue and we find no facts of record which would support such

an assertion. *See Amadeo v. Zant*, 486 U.S. 214, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). Accordingly, the issue now asserted by the appellant has been waived.

### III

■ As noted above, the appellant also contends that his waiver of rights under *Miranda/Tempia* [9] was neither knowing or voluntary.[10] At trial, the Government established by a preponderance of the evidence that the appellant's waiver was uncoerced and that the appellant possessed the requisite level of comprehension of the nature of the right and of the consequences of the decision to abandon it. *See Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986). The military judge correctly concluded on the evidence before the court at the time of the ruling that appellant's waiver was knowing and voluntary under the totality of the circumstances.

The evidence upon which the appellant now relies in challenging the military judge's finding, the opinions of expert witnesses, was not offered into evidence until after the confession had been admitted. The appellant made no motion for reconsideration of the ruling admitting the confession nor has he offered any justification for his failure to raise the matter on motion. We will not permit a party to challenge the legal correctness of a military judge's ruling on the basis of arguments not made and evidence not offered at the time the issue was before the trial court. *Cf. United States v. Fountain*, 840 F.2d 509, 511 (7th Cir.1988) (legal error may not be predicated on steps not taken and arguments not made). Accordingly, we find that the

---

9. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia*, 37 C.M.R. 249 (C.M.A.1967).

10. As noted, the appellant asserts these issues in a combined argument; in doing so, he elides the distinction which exists between these two separate—albeit related—issues. In *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), the Court described "judicial rulings on voluntariness prior to admitting confessions" and the exclusion of confessions flowing from custodial interrogations without adequate rights warnings and waivers as "independent values."

*Lego v. Twomey*, 404 U.S. at 487–88, 92 S.Ct. at 625–26 (citing *Jackson v. Denno, supra,* and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). *Compare Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (confession which is involuntary cannot be used for impeachment purposes on cross-examination), *with Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (confession obtained without benefit of *Miranda* warnings can be used for impeachment when otherwise voluntary).

military judge did not abuse his discretion in finding the appellant's waiver knowing and voluntary.

We have considered the matters personally asserted by the appellant and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge DeFORD and Judge KENNETT concur.