UNITED STATES, Appellee

v

WILLIAM P. THOMPSON, Staff Sergeant, and FRANK MARTINI,
Airman Second Class, U. S. Air Force, Appellants

11 USCMA 252, 29 CMR 68

No. 13,183

Decided February 19, 1960

*Major Charles K. Rush* argued the cause for Appellants, Accused. With him on the brief were *Lieutenant Colonel Philip J. Williamson* and *Captain Norman J. Nelson.*

*Lieutenant Colonel Francis R. Coogan* argued the cause for Appellee, United States. With him on the brief was *Colonel John F. Hannigan.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Appellants Thompson and Martini—together with one Donald G. Hiatt and another—were tried jointly by a general court-martial convened at Tachikawa Air Base, Japan, and stand convicted for larceny of a quantity of copper wire, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. No appeal on behalf of Hiatt is before us, and the fourth accused was found not guilty by the court-martial. Accordingly, we deal only with the first two above-named appellants. Their sen-

**253**

tences, as affirmed by the board of review, extend respectively to bad-conduct discharge, suspended with provision for automatic remission, and a fine of $500, for Thompson; and as to Martini, bad-conduct discharge, total forfeitures, and confinement at hard labor for two years. They petitioned this Court, and we granted review limited to the following three issues:

1. Whether the law officer erred in denying a motion to dismiss the charges against accused Thompson because of a prior grant of immunity.

2. Whether the staff judge advocate's pretrial advice was deficient in not advising the convening authority regarding the alleged grant of immunity to the accused Thompson by Colonel Armstrong.

3. Whether the admission in evidence of a stipulation on behalf of another accused resulted in material prejudice to the rights of accused Martini.

A decision in this case does not require that we recount the circumstances surrounding the theft. Accordingly, only such facts as are germane to resolution of the issues before us will be set forth, and in the interests of convenience and clarity they will be related as they become pertinent to our discussion.

I

Two of the above issues concern only accused Thompson. Upon his arraignment, a motion was made to dismiss the charge against him on the ground of "a defective promise of immunity." An out-of-court hearing was held and, in support of that prayer for relief, his defense counsel made an offer of proof which, for the purpose of the motion, the law officer accepted as true. In connection with its acceptance, the law officer questioned defense counsel as to whether he was stating his offer in a way most favorable to his client. The theory of the law officer was that he was dealing with a question of law and he was willing to give the accused the chance to build the best factual foundation to support his motion. When he was assured that counsel had stated all

the evidence they could hope to show, the law officer announced he would take the facts at full face value for the purpose for which they were offered. From the statement, it appears that other items in addition to the wire, the subject of the charge in the case at bar, had been stolen from the Air Force warehouse involved. In brief, the contention by the defense was that accused Thompson's squadron commander, a Lieutenant Colonel Armstrong, had told him that while he did not think Thompson was implicated in the other thefts, he believed he had knowledge of them and that if he revealed all he knew about the other offenses, he would not be prosecuted for theft of the wire. In reliance on the Colonel's proposition, Thompson did so, but nevertheless, thereafter his squadron commander preferred the instant charge against him. A certain Brigadier General was the convening authority exercising general court-martial jurisdiction, and there was no showing whatever that Colonel Armstrong's alleged action was at his direction, upon his authority, or with his knowledge. In connection with the promise by the squadron commander to grant immunity, the defense conceded that officer was without authority to make a valid grant.

Accepting those facts as the basis for his ruling, the law officer denied the motion. That he was correct there can be no question, for it is well settled that a squadron commander in the position of the Lieutenant Colonel here involved is without authority to bind the Government by any such promise. United States v Werthman, 5 USCMA 440, 18 CMR 64; United States v Guttenplan, 20 CMR 764. Indeed, as noted earlier, counsel for Thompson referred to "a defective promise of immunity" and in stating his facts and arguing in support of the motion to dismiss, conceded the Colonel had no power to grant immunity. Rather, he urged that the squadron commander represented himself to hold the authority, that by so doing he became an agent of the Government, and it, therefore, was estopped from trying Thompson. And appellate defense counsel before this Court reit-

254

erate the contention that the validity of the promise of immunity should be sustained on some theory of agency. Obviously, those arguments must fail. The record does not remotely suggest the officer exercising general court-martial jurisdiction was aware of any promise by Thompson's squadron commander, and a holding of agency based merely on the existence of a channel of command or an alleged assertion of the agent would fly full in the face of our prior holding limiting the authority.

Lest anyone think we ignore the equities of the situation, we invite attention before leaving this issue to the fact that an accused in the position above-described is not without means of relief. Obviously, he could endeavor to obtain ratification of a defective promise from proper authority. Moreover, it is certain, as the law officer pointed out in the case at bar, that one who implicates himself relying upon an ineffective promise could bar any such statement from admission in evidence. Inasmuch as no such evidence was used against Thompson, however, it is clear he has no cause for complaint. For aught that appears of record, he was not even involved in any other offenses and could be called as a witness to testify against the persons involved. Under those circumstances, he is in the position of seeking to bar his trial on one offense for having given information on others which he had no right to withhold but, to the contrary, was obliged to disclose. Manifestly, the law officer's ruling on Thompson's motion to dismiss was correct.

## II

The second issue which concerns accused Thompson involves the pretrial advice to the convening authority. It is challenged on the ground that it does not mention any promise of immunity to Thompson by his squadron commander. The argument is predicated on the assertion that knowledge of any such ineffectual promise would tend to have a material effect on the convening authority's decision to refer the charge to trial. Hence it is claimed the omission constituted prejudicial error.

This issue too must be resolved adversely to the defense. Obviously, unless such a promise was made, this claim must fail and, at the outset, we note that the asserted error assumes the predicate upon which it is based. Nowhere is there any evidence of record that Thompson's squadron commander in fact made any such promise to him. True it is that the defense made such claim, but the law officer made it abundantly clear he would assume the facts submitted in the offer of proof to be true for the purpose of the motion alone. Thus, while it serves as the basis for determining the propriety of the law officer's action on the preliminary prayer for relief, it provides no foundation for this claim of error. The information submitted by the defense in its proffer is not evidence, nor does an offer of proof establish the truth of facts related therein. See paragraph 154c, Manual for Courts-Martial, United States, 1951. In fact, we point out that, in submitting his offer of proof, counsel for Thompson candidly admitted "that if the prosecution should decide to call Colonel Armstrong in rebuttal, there might be a dispute as to just how much of what was promised." Quite clearly this record is devoid of the basic facts upon which this contention must rest, and we are unwilling, solely on conjecture, to tar Thompson's squadron commander with a finding that he intentionally deceived and broke faith with him.

However that may be, though, there is an additional reason for rejecting this assignment. Even were we to assume the promise was made to Thompson, we cannot charge the staff judge advocate with knowledge thereof. And since that officer's lack of information must be attributed to Thompson and his defense counsel, he cannot be heard to complain. We reach this conclusion for the following reasons. Nowhere in the entire file—including the allied papers and the investigating officer's report—upon which the staff judge advocate predicated his pretrial

**255**

advice, is there any indication of a promise. Accused Thompson—who was represented at the investigation by the same lawyer who defended him at trial —elected to remain silent, and neither lawyer nor client made known to the investigating officer any claim of promised immunity. Further, Lieutenant Colonel Armstrong did not testify nor submit any statement at the Article 32 hearing and, as a matter of fact, the record does not indicate that any statements whatever, made by accused Thompson after the alleged promise, were ever made a part of the file or considered at the investigation. Thus this record, at the time the staff judge advocate prepared the pretrial advice, was not only barren of any information concerning Thompson's relations with Colonel Armstrong, but it affirmatively indicates that if the latter did indeed make any promise, knowledge thereof—which was obviously well known to the defense—was deliberately withheld from the attention of the investigating officer and staff judge advocate. Instead, the claim was first advanced upon accused's arraignment at trial. Manifestly, we should be unwilling to castigate the staff judge advocate for failing to bring to the convening authority's attention some unusual information about which the legal advisor had not been informed, and particularly when such lack of knowledge must be attributed to the defense tactics of non-revelation.

### III

That brings us to accused Martini's assignment of error. In order to bring this issue into proper focus, it is necessary to set out a few facts. As we have earlier noted, this was a joint trial. Along with the accused with whom we are concerned in this appeal two others were tried, one of whom was the aforementioned airman Hiatt. In the course of the trial, a stipulation was received on his behalf to the effect that a Japanese National—one Iwabuchi—who was present at the warehouse at the time the wire was taken, picked Martini out of a line-up and positively identified him, but was able to make only the most tenuous and doubtful identification of Hiatt as the driver of the truck on

which the wire was loaded. The law officer accepted the stipulation over objection by counsel for Martini. However, he clearly and emphatically instructed the court-martial that they could consider the stipulation only on behalf of Hiatt, and that they were not permitted to consider the reference therein to Martini against the latter in any way whatever.

Certainly one accused may not, without another's express consent, stipulate facts incriminating the latter. Without doubt, however, the law officer fully appreciated this principle, for he *sua sponte* ordered an out-of-court hearing when the stipulation was given to him for his inspection, and himself posed the question whether the identification of Martini was pertinent to Hiatt's defense. It was at this juncture that counsel for Martini objected, claiming prejudice to his client. It must be borne in mind, as the law officer pointed out in considering the objection to the stipulation, that it was not presented by the Government, and it was not offered as being in any way pertinent to the case for or against Martini. Rather, it was submitted solely in behalf of Hiatt, and as his lawyer argued in supporting its admission, the whole thing was necessary to weaken the Government's case against his client by showing the quality of the "wishy-washy type of identification" Iwabuchi made. One thrust of his contention was that a witness who could identify one man present at the time the wire was taken should be able to identify the alleged truck driver just as easily. He summed that theory up in his closing argument when he expressed his puzzlement that witnesses who "must have seen that driver, had a chance to look at him, why they couldn't identify this man."

This situation is not unlike that in a joint trial where a pretrial statement of one accused may be admitted in evidence against him, although not admissible against his co-accused, under instructions limiting its consideration. As this Court, dealing with that problem in United States v Borner, 3 USCMA 306, 12 CMR 62, held, in a unanimous opinion:

"Although a statement of one accused may implicate his co-accused, this factor alone does not require severance. Under such circumstances, as a general rule, instructions by the law officer that the court may consider the statement as evidence only against the accused who made it, provide adequate safeguards against prejudice to the co-accused."

The same reasoning applies here. Sound reasons existed for trying these accused jointly, and it is to be remembered they were not entitled to a severance as a matter of right. The requirements of a fair trial dictate that each accused must be permitted to introduce such competent and relevant evidence as he desires in the conduct of his defense. When such evidence unfairly incriminates one of the co-accused, though, severance may be required. However, as we pointed out in United States v O'Briski, 2 USCMA 361, 8 CMR 161, the law is well settled that ordinarily the triers of fact must be deemed to follow the instructions they are given. Thus, the "lion's share" of such contentions must fall in the face of a cautionary or limiting charge. See also United States v Patrick, 8 USCMA 212, 24 CMR 22; United States v Shaughnessy, 8 USCMA 416, 24 CMR 226; United States v Shamlian, 9 USCMA 28, 25 CMR 290.

Without question, this case falls within that rule. The matter to which objection was taken was not without import in the case, for it was pertinent to Hiatt's defense. Furthermore, it should be noted that the witness Iwabuchi had already testified on the merits, and in open court had positively identified accused Martini as the man who had instructed him to load the wire on the truck. Thus the stipulation put before the court members apprised them of nothing adverse to Martini of which they were not already properly aware. Appellate defense counsel suggest, however, that the court-martial might, even in the face of the law officer's admonition, consider the stipulation to corroborate Iwabuchi's trial testimony. That remote possibility is so minuscule as to be unworthy of consideration, particularly in view of the compelling evidence implicating Martini. As Government counsel point out, not only did the Japanese witness unqualifiedly identify him, but a co-participant in the theft— one Petway—had turned state's evidence and testified to Martini's part in the perpetration of this crime. Thus, we are constrained to reject this last assignment of error.

For the foregoing reasons, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.