UNITED STATES, Appellee

v

JOSEPH T. CALIENDO, Airman First Class, U. S. Air
Force, and EDWARD F. WOLF, Jr., Airman Second
Class, U. S. Air Force, Appellants

13 USCMA 405, 32 CMR 405

No. 16,067

December 21, 1962

*Lieutenant Colonel Quincey W. Tucker, Jr.,* argued the cause for Appellants, Accused. With him on the brief was *Colonel Joseph E. Krysakowski.*

*Major James Taylor, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Colonel Merlin W. Baker* and *Lieutenant Colonel Emanuel Lewis.*

## Opinion of the Court

KILDAY, Judge:

Appellants Caliendo and Wolf were tried jointly by general court-martial at George Air Force Base, California. Each was convicted of wrongful disposition of military property of the United States, in violation of Article 108, Uniform Code of Military Justice, 10 USC § 908, and larceny of the same property, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. They received identical sentences: bad-conduct discharge, total forfeitures, confinement at hard labor

for five months, and reduction to the grade of Airman Basic. The sentences as adjudged were approved by the convening authority and affirmed by an Air Force board of review. Thereafter, upon their petition to this Court for grant of review, pursuant to Article 67(b)(3) of the Uniform Code, 10 USC § 867, we allowed this appeal.

Generally stated, petitioner's position is that their conviction was based on illegally obtained evidence which was improperly used against them. The basis for this contention is a purported "promise not to prosecute," given as an inducement for return of the property in question. A recitation of the pertinent facts will place the issue raised by the defense in focus.

The government property in question was seventy-two bed sheets having a value of $1.60 apiece. It was part of a shipment of twenty-seven cases, each containing seventy-two sheets, received at base supply, George Air Force Base, California, on or about August 1, 1961, from the General Services Administration. As this was a duplicate shipment the sheets were not needed. They were to be returned and were stored in the receiving bay of the receiving and classification warehouse at the base to await disposition instructions. When the returned sales authorization was received on about September 15th, it was determined that one of the cases was missing. A search of the immediate area for the missing case was negative. On the afternoon of that same day, the civilian supervisor, Mr. Cheney, called an official meeting of all personnel in the receiving and classification section, including Caliendo and Wolf, to "discuss this and see if anybody had any information leading to the sheets." Also present at the meeting was Staff Sergeant Maflin, military supervisor of both accused and noncommissioned officer in charge of the section. Cheney had previously discussed the matter of the missing sheets with Sergeant Maflin.

At that meeting, after informing those assembled of the loss, Cheney stated that, "if the sheets were returned there would be no action taken." Sergeant Maflin testified that he repeated

**408**

Cheney's remarks. He also verified that it was an official meeting and that none of the personnel present nor either of the appellants were warned of their rights under Article 31, Uniform Code of Military Justice, 10 USC § 831.

On the following day, September 16th, Wolf appeared at the quarters of Sergeant Maflin and inquired as to what would happen if the sheets were returned. Maflin replied that he "couldn't make any promises, that he [Wolf] would have to see Mr. Cheney about it, or see somebody in charge." Subsequently, on two occasions on the same day, Wolf brought a total of fifty-one sheets to Maflin's quarters. Together they took them to the receiving and classification section. No Article 31 warning was given to Wolf on this occasion.

The accused were interviewed by an air police investigator, one Parris, on Monday, September 18th, and advised in accordance with Article 31 of the Code, supra. Parris told each of them that any previous statement could not be used against them "at this time." He did not tell them that any prior action could not be used against them nor did he tell them that despite what they had been told no immunity could be granted. Each accused executed written confessions to Parris.

Timely objection, overruled by the law officer, was made at trial as to (1) the admissibility of the evidence concerning the return of the stolen sheets on the grounds that this action had been induced by a promise not to prosecute and was the product of an interrogation which had not been preceded by a warning, and (2) the receipt in evidence of the statements made by accused to Airman Parris on the ground that they were the fruits of the prior illegal evidence and made under the influence of the original inducement. In addition, appellants also allege error in the failure of the law officer to instruct the court that the incriminating statements could be considered only against the accused who made it, and his refusal of a defense request for an instruction that incriminatory extrajudicial statements

were not voluntary if induced by a defective promise of immunity.

Since the allegations of error are essentially based on the aforementioned statement of Cheney, reaffirmed by Sergeant Maflin, we are constrained to begin our discussion of this case through consideration of the nature of the statement and its effect on the subsequent activities of the accused.

The defense does not contest but in fact correctly concedes that, since neither Mr. Cheney nor ▪ Sergeant Maflin was authorized to convene a court-martial for trial of accused or to dismiss or make other disposition of court-martial charges, they were without authority to give a valid promise of immunity or to bind the Government by any promise whatsoever. Article 22, Uniform Code of Military Justice, 10 USC § 822; Manual for Courts-Martial, United States, 1951, paragraph 148e; United States v Werthman, 5 USCMA 440, 18 CMR 64; United States v Thompson, 11 USCMA 252, 29 CMR 68. Rather, it is alleged that this was a defective promise of immunity on which the accused relied and as such it "poisoned" the natural results that flowed therefrom—return of the sheets and the incriminatory statements.

In that connection, and citing United States v Thompson, supra, the board of review noted that, ▪ "Even though these comments do not constitute a grant of immunity, they do amount to a promise of benefit to the accused, and if the accused later incriminated themselves in reliance thereon, they could bar the receipt in evidence of any such incriminating statements." Indeed, in *Thompson*,[1] we upheld the denial of a motion to dismiss, predicated on the grounds of a defective promise of immunity. We noted, however, that the evidence obtained thereby was not used against Thompson and, although we affirmed the law officer's refusal to grant dismissal, we plainly stated that an accused who relies on such a position is not without means of relief. "Obviously, he could endeavor to obtain ratification of a defective promise from proper authority. Moreover, it is certain, as the law officer pointed out in the case at bar, that one who implicates himself relying upon an ineffective promise could bar any such statement from admission in evidence." 11 USCMA at page 255.

Similarly, promises of confidentiality have been viewed in the same context and statements obtained thereby have been ruled inadmissible. United States v Washington, 9 USCMA 131, 25 CMR 393; United States v Cudd, 6 USCMA 630, 20 CMR 346. See also United States v Haynes, 9 USCMA 792, 27 CMR 60.

Turning first to the return of the sheets we note that it is incontrovertible that the act of returning the sheets constituted a statement, as it was an incriminating admission. United States v Josey, 3 USCMA 767, 14 CMR 185; United States v Moten, 6 USCMA 359, 20 CMR 75. If the return was made in reliance on a promise, although defective, the evidence obtained thereby would be, as we have previously pointed out, inadmissible.

The approach by Wolf of Sergeant Maflin on the morning following the promise given the receiving and classification section, and Wolf's return of the sheets that same day, augurs strongly in favor of the inference that he was acting under the influence of the inducement. To the contrary, however, is the fact that when he voluntarily appeared at Maflin's residence, not having been summoned, Wolf did not openly confess to Maflin. Neither did he immediately produce

---

[1] Thompson was suspected of stealing copper wire. His squadron commander told him that while he did not think Thompson was implicated in other thefts, he believed he had knowledge of them and that if he revealed all he knew about the other offenses he would not be prosecuted for theft of the wire. In reliance thereon Thompson talked after which he was charged with theft of the wire.

the sheets. Rather, after simply stating he thought he knew where the sheets were, he inquired as to what would happen if the sheets were returned. When told that no promise could be made, he left. It was thereafter he returned with the sheets, and there is no evidence in the record of any further conversation between Wolf and Sergeant Maflin, or any indication that Wolf went to see Cheney as suggested by the Sergeant.

If Wolf, as alleged, was in fact relying on the previous day's promise, why did he find it necessary to seek confirmation from Sergeant Maflin? By so doing, he indicated his doubt as to the validity of the promise. And surely Maflin's answer further undercut any promise. Accused's subsequent act thus bears the marks of a disclosure freely made and without solicitation. United States v Creamer, 1 USCMA 267, 3 CMR 1.

Where there is conflicting evidence as to whether an unlawful inducement has been dissipated or removed, the law officer should properly submit this question for determination by the triers of fact. Here the law officer was confronted with just such a situation. On the one hand the defense pointed to a promise not to prosecute. On the other, there is evidence that Wolf did not act in reliance on the prior promise; by his actions and words he inferred doubt as to the validity of the promise or whether it would be kept. The law officer apparently felt, and we agree, that the issue whether Wolf acted voluntarily and not in reliance on improper inducement, was reasonably raised by the evidence. Hence, he allowed the testimony to be heard. Voluntariness, like trustworthiness, is a factual question. United States v Jones, 7 USCMA 623, 23 CMR 87; United States v Odenweller, 13 USCMA 71, 32 CMR 71. See also United States v Monge, 1 USCMA 95, 2 CMR 1.

Having so decided, it was incumbent upon the law officer to properly instruct the court with reference thereto. In his instructions on the out-of-court statements of the accused, the law officer informed the members that:

". . . If you determine that the statements were involuntary, you must refuse to consider them as evidence. You may accept the statements as evidence only if you determine beyond a reasonable doubt that they were voluntary. You are also advised that if you find the statements were voluntary, any evidence introduced as to the voluntary or involuntary nature of the statements may be considered by you in determining the weight that you will give to the statements.

"You are further advised that a statement for these purposes include[s] a physical act, such as the return of missing property.

"You are further advised in this connection that these out-of-court statements of the accused are not voluntary if they were obtained from the inducement."

The issue was properly submitted to the court and decided adversely to the accused.

Appellate defense counsel also contend that since Sergeant Maflin did not give an Article 31 warning to Wolf at the time of their conversation or when the sheets were returned, his testimony concerning this activity was inadmissible. But not every inculpatory statement made by an accused in conversation with another is inadmissible because of a failure to warn him of his rights under Article 31. United States v Dandaneau, 5 USCMA 462, 18 CMR 86. The prohibition of the Article extends only to statements elicited in the course of an official interrogation. United States v Dandaneau, supra; United States v Gibson, 3 USCMA 746, 14 CMR 164. Since Wolf appeared at Sergeant Maflin's residence voluntarily and there was no interrogation or request by the latter resulting in the return of the sheets, there was no

necessity for a warning in this instance.

Next, we must consider whether the written pretrial confessions of both Caliendo and Wolf to Airman Parris were inadmissible. In examining this portion of the record we find that an Article 31 warning was given for the first time. In addition, they were advised that any previous statements could not be used against them. Appellants acknowledged their understanding of their right to remain silent but contend that they gave these statements in the belief that "no action would be taken." Herein they not only acknowledged their collective guilt of the offenses but also identified three individuals who, in testimony at trial, further established their connection therewith.

Even though, as earlier developed herein, the court-martial might permissibly conclude Wolf did not return the sheets as the result of an illegal inducement, an issue was presented that he did so. Thus, we must consider the possibility that the "second confession" was tainted by the earlier verbal act. In United States v Bennett, 7 USCMA 97, 21 CMR 223, we laid down the principle that in order for a second confession to be freed from the taint of a prior illegal one, there must be a strong showing that the taint was removed by a later warning. See also United States v Bayer, 331 US 532, 91 L ed 1654, 67 S Ct 1394 (1947). Here there was a later warning under Article 31. In addition, although Caliendo and Wolf were told, on September 15th, that "no action would be taken" if the sheets were returned, in point of fact and to the contrary action was being taken by Air Force authorities at the time the pair were interrogated on September 18th. It should have been obvious at the outset of the interviews that Cheney had not kept his word. Moreover, as previously noted, the record shows Parris warned them of their rights under Article 31 before questioning them. And, significantly, the sworn subscribed confessions each executed on September 19th are both prefaced by the statement that the affiant is aware he need make no statement; that if he does so it may be used against him; and that, knowing these things and without promise of immunity or reward or other inducement, he chooses to make a statement. Certainly that acknowledgment is inconsistent with reliance on a prior promise. Additionally, nowhere is it shown or claimed that either of the appellants called Parris' attention to Cheney's promise. Their failure to do so, weighed along with their acknowledgment to Parris that they fully understood their rights, is indicative of unhampered free volition.

Whether the influence of the first confession taints a later confession is basically a question of fact that depends for its determination upon consideration of all of the relevant circumstances. If the fact finders could reasonably conclude that the confession was voluntary, then we must affirm. United States v Monge, supra. This evidence, in our opinion, is sufficient to raise at least a question of fact as to whether the confessions to Parris were made under the influence of the original inducement and, in the case of Wolf only, also as a result of a conviction that the cat was already "out of the bag" and could not be rebagged. United States v Bayer, supra. However, it must be borne in mind that it is not always impossible to "rebag" the cat. United States v Spero, 8 USCMA 110, 23 CMR 334, concurring opinion of Judge Ferguson.[2]

In addition, this record reflects that at the time they executed these statements, the appellants were operating under different circumstances and in the presence of a stranger to the transaction during which the promise was given. If, at that later time, any

---

[2] Caliendo is in no position to complain on this latter point since he did not participate in the return of the sheets and, in fact, for aught the record shows, was not aware of their return until two days later—the same day he made his written confession.

"coercive" influence caused them to talk, it may fairly be concluded it arose from their desire to confess their wrong and hope for favorable treatment from the Government. That is not an influence of sufficient strength to render the written confessions inadmissible. United States v Johnson, 5 USCMA 795, 19 CMR 91.

Since this was a question of fact on which reasonable minds could differ, we hold that the law officer did not err in allowing these statements into evidence under proper instructions.

Inasmuch as Caliendo and Wolf in their statements to Parris each identified other individuals who, upon testimony, further established the guilt of the accused, the law officer, in light of defense objection to admissibility of such testimony, further instructed the court that "the testimony of witnesses whose identities were procured through such out-of-court statements by the accused must not be considered by you as evidence if the out-of-court statements of the accused were involuntary."

It is patently obvious that the law officer, in his instructions, more than adequately covered the issue of voluntariness.

Appellate defense counsel also allege that the law officer, having allowed the incriminatory statements and testimony regarding the return of the sheets into evidence over objection at trial, was obligated, under the provisions of paragraph 140b, Manual for Courts-Martial, United States, 1951, to instruct the court-martial that incriminating extrajudicial statements of one of the joint accused could not be considered against the other. And failure to do so was prejudicial error. The pertinent paragraph of the Manual as cited by defense reads as follows:

"When two or more accused are tried at the same time, evidence of a statement made by one of them which would be admissible against him if he were tried alone but would not be admissible against another of the accused if he were being tried

alone may be received in evidence, but in such event the law officer . . . should instruct the court in open session that the statement can be considered as evidence only against the accused who make it."

Unquestionably, when evidence of admissions is received at a joint trial, limiting instructions should be given. United States v Borner, 3 USCMA 306, 12 CMR 62. However, in the event of a failure to so instruct, there must be a fair risk that the error prejudiced the accused. United States v Humble, 11 USCMA 38, 28 CMR 262. Each case must be separately considered. Error is not a basis for reversal unless it is prejudicial. United States v Fleming, 3 USCMA 461, 13 CMR 17. See also United States v Lucas, 1 USCMA 19, 1 CMR 19, citing Kotteakos v United States, 328 US 750, 90 L ed 1557, 66 S Ct 1239 (1946).

While in the case at bar the law officer did not specifically instruct in accordance with the quoted provisions of the Manual, he did, on two occasions in his instructions, specifically call the court's attention to the fact that, while this was a joint trial, the accused were charged as individuals and that the court's findings must be made as to each accused individually. "The mere fact that you may be satisfied beyond a reasonable doubt that one of the accused is guilty does not necessarily mean that the other accused is guilty. . . . If you find one, but not the other accused guilty of the joint offenses charged, it will be necessary to make such a finding by exceptions."

Apparently trial defense counsel felt this was sufficient as no request was made that a limiting instruction be given. When, as here, the defense makes no objection, the accused cannot complain for the first time on appeal, unless a miscarriage of justice would result if the error was not noticed. United States v Sanchez, 11 USCMA 216, 29 CMR 32.

The accused were represented by separate, certified appointed defense

counsel and there is nothing in the record to indicate divided loyalty of counsel or antagonistic defenses. Here also, the guilt of each co-accused was in nowise dependent upon the incriminating statements of the other. Each accused, in his own statement, admitted substantially the same conduct mentioned in his co-accused's statement.

As the failure to give a limiting instruction did not affect the substantial rights of either accused, did not result in specific prejudice, and guilt was established by other competent evidence, reversal is not required. United States v Humble; United States v Fleming; United States v Lucas, all supra.

Lastly, we consider the appellant's contention that the law officer erred prejudicially by refusing a defense requested instruction that the accused's statements were not voluntary if they were induced by a defective promise of immunity.

At the time the pretrial statements of the accused were received in evidence, the law officer stated that:

"There has been some evidence induced [sic] that prior to making of these out-of-court statements, that the accused was subjected to unlawful influence and unlawful inducement and immunity granted. This is a matter which you must consider in your determination as to whether the statement was voluntarily made. If, after considering these matters and all the other referenced material which touches on the voluntariness or involuntariness of the statement, you do not determine beyond a reasonable doubt that the statement was voluntary, you must reject the statement and disregard it as evidence."

And prior to the court closing to deliberate on findings, the law officer instructed, as earlier noted, that the accused's statements were not voluntary if they were obtained because of the inducement.

We do not see how, in all fairness to the accused, the law officer could have been more explicit. Moreover, to have instructed *in haec verba* as requested would have caused to be introduced for consideration by the court the question of whether the promise of immunity was effective or defective. In any event, this is certainly an immaterial consideration with regard to the admissibility of the accused's statements.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.