**UNITED STATES**

v.

**Daniel W. CUMMINGS, 261 55 3316 Quartermaster Seaman Recruit (E–1), U.S. Navy.**

**NMCM 85 3992.**

U.S. Navy-Marine Corps Court of Military Review.

Decided 28 Feb. 1986.

LCDR JAMES J. QUIGLEY, JAGC, USN, Appellate Defense Counsel.

LT RICHARD K. HODGES, JAGC, USNR, Appellate Defense Counsel.

LT P.J. BATTIN, JAGC, USNR, Appellate Government Counsel.

Before KERCHEVAL, Senior Judge, and RAPP and GRANT, JJ.

RAPP, Judge:

The appellant was charged with almost three years desertion. He pleaded not guilty before a general court-martial (military judge alone) and was acquitted of desertion but convicted of unauthorized absence for the same period. His sentence included a bad conduct discharge, confinement for nine months, and forfeiture of $450.00 pay per month for three months. The findings and sentence were approved without change by the convening authority. At trial and before this Court the appellant has complained that he was denied a speedy trial, because the Government failed to meet its burden of proof in showing that his confinement in a civilian jail was excludable pursuant to Rule for Courts-Martial (R.C.M.) 707(c)(6) from the 120-day period allowed under R.C.M. 707(a) for bringing him to trial.

The undisputed facts show that the appellant commenced an unauthorized absence on 25 January 1982. He was apprehended by civilian authorities for a civil charge on 11 January 1985. In early April 1985 civil charges against the appellant were dismissed pursuant to entry of a *nolle prosequi.* He was released from ci-

vilian custody to military authorities on 29 April. Otherwise, the Government and the appellant greatly differed in their view of the circumstances. In his motion to dismiss litigated at trial the appellant contended that, after he was arraigned on the civil charges on 18 January, he informed his civilian jailer that he was an unauthorized absentee from the Navy, that the civilian authorities verified his claim, that the Navy was informed he was in custody, that he was retained in civilian custody due to a "Navy hold," and that he could have been released from civilian custody on a "signature bond" if not on hold for the Navy. In response, the Government asserted that the military authorities were at first informed on 19 January 1985 that the appellant was in the custody of civilian authorities pursuant to civilian charges, and not notified until 29 April 1985 that the appellant was immediately available to be picked up by the Navy. The military judge refused to grant the motion based on his "belief from the facts that have been presented that the Navy's first indication that the accused was technically or rather technically available for release to Navy jurisdiction was upon the April notification after the formal dismissal of the charges...."

█ Looking first at the applicable law, we are reminded that the unauthorized absence of an accused in the custody of civilian authorities pursuant to civil charges does not end until those authorities notify the appropriate military official that the accused is "immediately available" for turnover to the Navy. *United States v. Lanphear,* 23 U.S.C.M.A. 338, 49 C.M.R. 742 (1975). The Government's accountability for the confinement of such accused covers only that period of time over which the prosecution has control, so that, after notification of the accused's immediate availability to military authorities, the Navy has a reasonable time to arrange for his transportation to the cognizant military facility. *See United States v. Halderman,* 47 C.M.R. 871 (N.C.M.R.1973). Once an accused has raised the speedy trial issue, the Government has the burden of proof by

a preponderance of the evidence. R.C.M. 905(c).

 During litigation of the motion at trial the appellant presented testimony of his civilian defense counsel, Naval Reserve Chief Petty Officer D, that the appellant at his civilian arraignment was granted a signature bond ("simply a promise to pay") which would have effected his release from civilian confinement by the appellant's signature alone; that computer records at the civilian jail indicated a "Navy hold" on the appellant; that due to the "hold" the jail procedures required retaining the appellant in custody pending a reasonable opportunity for the Navy to pick him up; that, even if the appellant had signed his bond, the Navy would have been notified to come and pick him up within a few days but in the meantime the Navy hold would preclude his release; that the jail records contained no indication that the signature bond had been signed; and that Chief Petty Officer D contacted the Naval Legal Service Office at Orlando, Florida to effect his client's release and was told that a "restricted order" would be needed but would likely not be issued. Also, the appellant introduced a letter from Florida Circuit Judge M stating that the appellant "was eligible for release on January 19, 1985 ... upon a signature bond (promise to pay) or release upon his own recognizance but for a hold placed upon him by the United States Navy." On the basis of the defense evidence we find that the issue of denial of speedy trial has been raised.

The Government's evidence consisted of two documents. The first was styled "Supplemental Repeat Travel Orders" and pertained to the travel of the Absentee Collection Unit which transferred the appellant from the civilian jail to a Navy facility. In pertinent part the document stated, "UA TIME AND DATE: 2000, 25 JAN 82" and "APP/SURR TIME/DATE, RMC TIME/DATE: 1756 (EST) 18JAN85/1227-(EST)29APR85" and "PRESENT LOCATION/PHONE NO: BREVARD COUNTY JAIL, BREVARD, FL." The second document was a Navy message stating:

SUBJ: RTN DESERTER QMSR DANIEL WESLEY CUMMINGS, USN, 261–55–3316

A. NAVMILPERSMAND 3430300

1. SNM A DESERTER HAVING BEEN UA SINCE 2000, 25 JAN 82.

2. SNM APP AND RTND MILCONT BY DESERTER INFORMATION POINT (NMPC–843) 1227, 29 APR 85.

3. SNM TO BE RTND YR CMD FOR DISCIPLINACT/DISPO LAW REF A. EDA: 30 APR 85.

In addition the trial counsel made an "offer of proof" stating,

I did contact the deserter information point in Washington, NMPC–843, yesterday, and a review of their records indicated that someone from Titusville did call Washington on 19 January 1985 and told them that the accused was there subject to civilian charges. There was no indication, and they were told that the accused was not then available for release to military control. The records indicate that the first occasion that they were told that the accused had been cleared of these charges, he is now available for return to military control, was at 1227 on 29 April 1985.

The trial counsel also proffered that "the RCM date is the time and date he was returned to military control by virtue of communication with the deserter information point in Washington."

 In reviewing the military judge's findings of fact we are constrained by governing case law to give "due deference" to his decision "unless it is unsupported by the evidence of record or was clearly erroneous." *United States v. Middleton,* 10 M.J. 123, 133 (C.M.A.1981). We are not permitted to consider the matters set forth in the Government's offer of proof. *See United States v. Thompson,* 11 U.S.C.M.A. 252, 29 C.M.R. 68 (1960); *United States v. Eastman,* 20 M.J. 948 (A.F.C.M.R. 1985). In this case a comprehensive statement by the military judge of his essential findings and the rationale for his decision would have been helpful. *See* R.C.M. 905(d) and *United States v. Postle,* 20 M.J. 632, 640

(N.M.C.M.R.1985). Nevertheless, we have been able to ascertain that his finding of fact is not clearly erroneous and is supported by the evidence of record. In particular, we note the testimony of the appellant's civilian counsel on direct examination that "if the appellant signed the documents, that he would—a hold would have been—the Navy would have been notified to come and pick him up within a period of a few days." On cross-examination this crucial matter was further amplified:

Q. Well, I'm talking about subject to the hold that was on their records, what would have happened to the accused if he signed that bond?

A. If he signed that bond, he would have been held in the jail in Titusville.

Q. *At that time* control of the accused would have been turned over to the Navy. He would *at that point* be held subject to the Navy's outstanding charges as opposed to the charges down in Titusville?

A. Well, *at that time* he would be brought back before the court. The committed magistrate, after a control period usually—usually it's not more than ten days. A control date is established, he's brought back before the court at the end of his ten days, and if the requesting agency hasn't picked him up, the judge will inquire as to the facts and circumstances as to why they have not picked him up, and if there's some type of mitigating circumstances and the evidence of guilt is great, he may hold him for a longer period of time and set a second control date and advise the reporting agency again to come pick him up.

Q. I guess what I'm trying to ask is, if he had been released on the bond, he really wouldn't have been released. If he had come forward with the bond as directed by the military judge, *at that time* Titusville would have called the Navy and said "okay, *he's been released pursuant to our charges. We're now holding him for you* to come pick up." Is that correct.

A. That's the technical. (Emphasis added.)

Thus, the appellant himself controlled the timing of his return to military custody. Had he signed the bond, the Navy would have been notified of his immediate availability and he would have been held a reasonable amount of time for the Navy. Since he did not sign the bond, the Navy was not notified of his availability and therefore did not become accountable until 30 April 1985, considering the established notification on 29 April and allowance of reasonable time for the appellant's transportation from civilian jail to Navy brig. The military judge's comment that he was "going to give the accused pretrial confinement credit from the 18th of January 1985" is not inconsistent with his finding of fact, as the conspicuous absence of any reference to *United States v. Allen,* 17 M.J. 126 (C.M.A.1984) shows that the military judge was, for purposes of extenuation and mitigation in general, acknowledging the equivocal circumstances surrounding the lengthy period the appellant spent in a civilian jail before his return to military jurisdiction. Thus, no R.C.M. 707 time limit was exceeded, and the appellant was not denied a speedy trial. We accordingly affirm the findings and the sentence as approved on review below.

Senior Judge KERCHEVAL and Judge GRANT concur.