UNITED STATES, Appellee

v.

Joshua R. MCKEEL, Seaman
U.S. Navy, Appellant

No. 05-0363

Crim. App. No. 200202328

United States Court of Appeals for the Armed Forces

Argued December 6, 2005

Decided April 14, 2006

EFFRON, J., delivered the opinion of the Court, in which GIERKE,
C.J., and CRAWFORD and BAKER, JJ., joined. ERDMANN, J., filed a
dissenting opinion.


Counsel


For Appellant: John B. Wells, Esq. (argued); Lieutenant Richard
H. McWilliams, JAGC, USNR.

For Appellee: Captain Roger E. Mattioli, USMC (argued);
Commander C. N. Purnell, JAGC, USN (on brief); Colonel W. K.
Lietzau, USMC, and Captain Glen R. Hines, USMC.



Military Judge: John A. Maksym


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

Appellant was charged with rape, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 120 (2000). At a general court-martial composed of a military judge sitting alone, Appellant was convicted, pursuant to his pleas, of the lesser included offense of indecent assault, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000). The adjudged sentence included a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence. Pursuant to a pretrial agreement, the convening authority suspended all confinement in excess of fifteen months for a period of fifteen months from the date the sentence was adjudged. The United States Navy-Marine Corps Court of Criminal Appeals affirmed in an unpublished opinion. United States v. McKeel, No. NMCCA 200202328, 2005 CCA LEXIS 16, 2005 WL 165397 (N-M. Ct. Crim. App. Jan. 26, 2005).

On Appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN NOT
> DISMISSING THE CHARGE AND SPECIFICATION
> BECAUSE THE APPELLANT RELIED TO HIS
> DETRIMENT ON A PRETRIAL AGREEMENT.

For the reasons discussed below, we affirm.

2

I.   BACKGROUND

Appellant contends that he entered into a pretrial agreement with a special court-martial convening authority (SPCMCA) before entering into the pretrial agreement with the general court-martial convening authority (GCMCA) in the present case.  Prior to entering his pleas, Appellant moved to dismiss the charges on the grounds that his earlier agreement with the SPCMCA included a grant of immunity.  According to Appellant, the SPCMCA agreed that there would be no court-martial if Appellant:  (1) agreed to accept nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815 (2000), for the charged misconduct, and (2) agreed to waive his right to contest his separation from the military at an administrative discharge board.  The motion was denied.  The present appeal concerns the authority to grant immunity and related considerations concerning the administration of nonjudicial punishment.

A.   THE AUTHORITY TO GRANT IMMUNITY

Military law recognizes two types of immunity that may be granted to a military accused.  Transactional immunity exempts an accused "from trial by court-martial for one or more offenses under the code."  Rule for Courts-Martial (R.C.M.) 704(a)(1).  Testimonial immunity protects an accused against "the use of testimony, statements, and any information directly or indirectly derived from such testimony or statements by that

person in a later court-martial." R.C.M. 704(a)(2). Testimonial immunity -- in contrast to transactional immunity -- does not bar prosecution of the person who has received the grant of immunity. See R.C.M. 704(a) Discussion.

The President, in the Manual for Courts-Martial, has restricted the authority to grant immunity. Within the armed forces, only an officer authorized to serve as a GCMCA may grant immunity. R.C.M. 704(c). The President has not constrained the GCMCA from using a subordinate to convey an offer of immunity to the designated person when the GCMCA has approved a specific grant of immunity. The GCMCA, however, may not delegate the authority to grant immunity. R.C.M. 704(c)(3).

A purported grant of immunity by an official not empowered by the President to make such a grant is not valid. At trial, the military judge may provide relief tailored to the circumstances if: (1) a promise of immunity was made; (2) the accused reasonably believed that a person with apparent authority to do so made the promise; and (3) the accused relied upon the promise to his or her detriment. See, e.g., Shepardson v. Roberts, 14 M.J. 354, 358 (C.M.A. 1983); United States v. Caliendo, 13 C.M.A. 405, 409, 32 C.M.R. 405, 409 (1962); United States v. Thompson, 11 C.M.A. 252, 255, 29 C.M.R. 68, 71 (1960); see R.C.M. 704(c) Discussion; Manual for Courts-Martial, United

4

United States v. McKeel, No. 05-0363/NA

States, Analysis of the Rules for Courts-Martial app. 21 at A21-38 (2005 ed.).

When the promise of immunity has been made by an officer having apparent but not actual authority, the remedy addresses the extent of detrimental reliance. See Caliendo, 13 C.M.A. at 409, 32 C.M.R. at 409; Thompson, 11 C.M.A. at 255, 29 C.M.R. at 71. Normally, detrimental reliance upon apparent authority can be remedied by measures short of a bar to prosecution, such as exclusion of evidence obtained directly or indirectly from the servicemember's reliance or precluding nonevidentiary uses of immunized statements in the decision whether to prosecute. See, United States v. Jones, 52 M.J. 60, 65 (C.A.A.F. 1999); United States v. Olivero, 39 M.J. 246, 249 (C.A.A.F. 1994). If the military judge has provided an adequate remedy at trial, no further relief is warranted on appeal. See Shepardson, 14 M.J. at 358. In unique circumstances, our Court has concluded that the only appropriate remedy is to dismiss the charges. See, e.g., United States v. Kimble, 33 M.J. 284, 289-92 (C.M.A. 1991); Cooke v. Orser, 12 M.J. 335, 342-43 (C.M.A. 1982).

### B. NONJUDICIAL PUNISHMENT

The UCMJ also preserves the authority of a senior commander to ensure accountability for misconduct by limiting the effect of nonjudicial punishment imposed by subordinates under Article 15, UCMJ. See United States v. Joseph, 11 M.J. 333, 334-35

5

(C.M.A. 1981). If a subordinate commander imposes nonjudicial punishment for an offense that is not "minor," see Article 15(b), UCMJ, the senior commander is not precluded from referring the matter for trial by court-martial. See Article 15(f), UCMJ; R.C.M. 907(b)(2)(D)(iv); United States v. Fretwell, 11 C.M.A. 377, 379, 29 C.M.R. 193, 195 (1960). When an accused receives a court-martial sentence for the same conduct that was punished at an Article 15 proceeding, the accused has the opportunity to request a sentence credit under United States v. Pierce, 27 M.J. 367 (C.M.A. 1989). See United States v. Bracey, 56 M.J. 387, 388-89 (C.A.A.F. 2002); United States v. Gammons, 51 M.J. 169, 180 (C.A.A.F. 1999).

## II.  DISPOSITION OF THE CHARGES AGAINST APPELLANT

### A.  NONJUDICIAL PUNISHMENT

During an interview with an agent of the Air Force Office of Special Investigations (OSI), Appellant admitted to engaging in sexual activity, including sexual intercourse, with an intoxicated female shipmate. Appellant also admitted that he did not believe that the shipmate was able to consent. The OSI agent recorded Appellant's admissions in contemporaneous, handwritten notes and in a subsequent summary of the interview.

The OSI investigation was forwarded to the SPCMCA in Appellant's chain of command. The chief petty officer (CPO) who

served as the ship's senior enlisted person responsible for military justice matters, conveyed the following offer to Appellant and his parents:  If Appellant accepted nonjudicial punishment under Article 15 for this misconduct, and if he waived his right to an administrative discharge board, there would be no court-martial and Appellant would be discharged administratively from the military.

Appellant accepted the offer.  The SPCMCA held a proceeding pursuant to Article 15, UCMJ, at which Appellant pleaded guilty to various charges, including rape.  The nonjudicial punishment ordered by the SPCMCA included forty-five days of restriction, forty-five days of extra duty, forfeiture of one-half pay per month for two months, and reduction in grade from E-3 to E-2.

### B. REFERRAL TO TRIAL BY GENERAL COURT-MARTIAL

Subsequently, Appellant was processed for administrative discharge.  Consistent with the agreement, the SPCMCA forwarded Appellant's administrative discharge packet to the GCMCA, who also served as the administrative discharge authority.  The GCMCA, who had no previous knowledge of the charges against Appellant, declined to approve the discharge, and ordered an investigation into the charges under Article 32, UCMJ, 10 U.S.C. § 832 (2000).  After the investigation was completed, the GCMCA referred a charge of rape -- for which Appellant had received nonjudicial punishment -- to trial by general court-martial.

### III. DISCUSSION

Appellant contends that he received a grant of immunity on the rape charge as part of his agreement with the SPCMCA. He further contends that the GCMCA erred in referring that charge to a general court-martial, and that the military judge erred in denying his motion at trial to dismiss the charge.

As noted in Section I.A., supra, when a servicemember seeks dismissal of charges based upon a promise of immunity, the servicemember must demonstrate that the promise was made by an officer authorized to grant immunity. Appellant recognized at trial, and has acknowledged on appeal, that the claimed grant of immunity was not issued by a general court-martial convening authority.

For purposes of this appeal, we shall assume, without deciding, that the CPO made the offer with the approval of a court-martial convening authority, the SPCMCA, and that Appellant reasonably relied upon an offer made with apparent authority. Because the claimed grant of immunity in the present case is based on apparent rather than actual authority, Appellant must demonstrate detrimental reliance and that remedial steps were inadequate. See supra Section I.A.

We note that the military judge ruled that statements made by Appellant at the nonjudicial punishment proceeding could not be admitted into evidence against him at the court-martial. The

prosecution also agreed at trial that Appellant's decision to waive an administrative discharge board, and matters related to his administrative separation, could not be used against him at trial. In addition, the prosecution agreed that Appellant would be entitled to full sentencing credit under Pierce for the punishment received at the nonjudicial punishment proceeding.

Well before Appellant entered into discussions with the CPO, he was interviewed by an agent of the OSI in which he set forth the details of his misconduct. Appellant's admissions, recounted in the OSI report, provided ample grounds for the GCMCA to reject the proposed administrative discharge and order a pretrial investigation under Article 32, UCMJ. Trial counsel asserted that the Government learned nothing from Appellant's statements during the nonjudicial punishment proceeding that it did not already know from his admissions to the OSI agent, and an affidavit of the CPO who made the offer to Appellant supports this assertion. Appellant has not identified any statement made during the nonjudicial punishment proceedings or in the administrative discharge packet that added any matter of significance to the information that would have been presented to the GCMCA in the course of making the disposition decision, absent the promise communicated to Appellant by the CPO. Under these circumstances, we conclude that the Government has shown that the decision to prosecute was untainted by the Article 15

proceeding and the administrative discharge packet.  See

Olivero, 39 M.J. at 249.

In summary, the record reflects that appropriate remedial

actions were taken at trial, and that Appellant has not

demonstrated detrimental reliance.  Appellant has not identified

any unique circumstances that would warrant dismissal of the

charges.


## IV.  DECISION

The decision of the United States Navy-Marine Corps Court

of Criminal Appeals is affirmed.

<u>United States v. McKeel</u>, No. 05-0363/NA

ERDMANN, Judge (dissenting):

The majority concludes that McKeel is not entitled to de facto transactional immunity because it finds that appropriate remedial actions have been taken and that McKeel has not demonstrated detrimental reliance. As I conclude that the concept of detrimental reliance is not a proper element in a de facto immunity analysis, I would conclude that McKeel had been granted de facto transactional immunity, that he was entitled to enforcement of that promise, and that the Government was barred from bringing a subsequent prosecution against him. I therefore respectfully dissent.

The facts in this case are straightforward. While attending an initial training school, McKeel was suspected of the rape and sexual assault of a female recruit. During a subsequent interview with the Office of Special Investigations (OSI), McKeel made a number of incriminating statements. Sometime after the OSI interview, Chief Petty Officer (CPO) Leiker, the chief legal officer, told McKeel and his parents that if he accepted nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815 (2000), and waived an administrative discharge board, he would not be court-martialed. McKeel accepted nonjudicial punishment under Article 15 and waived an administrative discharge board. McKeel was not provided the opportunity to consult with a judge advocate prior to accepting

the offer.  See Dep't of the Navy, Manual of the Judge Advocate General § 0109a.(1).  All of these actions were approved by the special court-martial convening authority (SPCMCA).  However, when McKeel's discharge package was received by the general court-martial convening authority (GCMCA), that officer declined to approve the administrative discharge and initiated steps resulting in a charge for rape being referred to a general court-martial.

McKeel filed a motion to dismiss on the grounds that he had received de facto immunity from CPO Leiker.  Following an Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2000), session, the military judge denied the motion to dismiss on the ground that under Rule for Courts-Martial (R.C.M.) 704, immunity is within the sole discretion of the GCMCA.  McKeel and his parents testified that they believed CPO Leiker had the authority to inform McKeel that if he accepted nonjudicial punishment under Article 15 and waived his right to an administrative discharge board he would not be court-martialed.  That testimony is uncontroverted.  Although the military judge stated that he was not convinced that CPO Leiker had apparent authority, he found that McKeel's mother believed that CPO Leiker had the authority.[1]  At the general

---

[1] The military judge did not make any specific findings regarding McKeel or his stepfather.  It was apparent from the record that

2

court-martial, McKeel entered a plea of guilty to indecent assault and was sentenced to five years of confinement, reduction to E-1, forfeiture of all pay and allowances and a dishonorable discharge.  Pursuant to a pretrial agreement the convening authority suspended that portion of the sentence in excess of fifteen months for a period of fifteen months.

The majority opinion recognizes the concept of de facto immunity and creates a test to determine when a military judge may fashion appropriate relief for promises of immunity made by a person without actual authority:  "(1) a promise of immunity was made; (2) the accused reasonably believed that a person with apparent authority to do so made the promise; and (3) the accused relied upon the promise to his or her detriment."  While the concept of detrimental reliance has sometimes been referenced in this court's immunity jurisprudence, I believe that the concept is misplaced in the de facto immunity context.  Consequently, a review of immunity in military justice is warranted.

United States v. Thompson, 11 C.M.A. 252, 255, 32 C.M.R. 68, 71 (1960), and United States v. Caliendo, 13 C.M.A. 405, 409, 32 C.M.R. 405, 409 (1961), were decided under para. 148e of

---

since he believed that only the general court-martial convening authority (GCMCA) could grant immunity, that line of testimony was not relevant.

the Manual for Courts-Martial, United States (1951 ed.).[2]  In

those cases individuals who did not have general court-martial

convening authority informed suspects that no action would be

taken against them if they either returned stolen property or

testified about a theft.[3]  This court held in both cases that

there was no valid grant of immunity because the individuals

purporting to make the grant did not have the requisite

authority.  In both cases, however, the court held that if the

defendants had incriminated themselves in reliance on the

defective promises, incriminating evidence or statements would

not be admissible.  Thus, while recognizing de jure immunity and

enforcing the voluntariness of pretrial statements, the court

did not raise the issue of de facto immunity and made no

conclusions in that regard.

This court issued a splintered decision in Cooke v. Orser,

12 M.J. 335 (C.M.A. 1982), under para. 68h of the Manual for

Courts-Martial, United States (1969 rev. ed.) (1969 MCM).[4]  In

_____

[2] That provision dealt with the interest or bias of a witness and
authorized a GCMCA to grant testimonial immunity.
[3] The other case relied upon by the majority in this analysis,
Shepardson v. Roberts, 14 M.J. 354, 358 (C.M.A. 1983), has
nothing to do with immunity but rather is a case in which the
convening authority withdrew from a pretrial agreement and the
issue in the case was whether the withdrawal was proper.  The
court held that a convening authority was bound to the agreement
if the accused had relied on the agreement to his detriment.
[4] Cooke was charged with espionage for providing information and
materials to the Soviet Union.  The three-member court produced
three separate opinions.  Judge Fletcher wrote the lead opinion,

that case the appellant argued that the staff judge advocate to the commander of the Strategic Air Command promised him immunity from prosecution if he provided a statement and took a polygraph test. The lead opinion found that the promises made by the staff judge advocate led Cooke to believe that if he cooperated he would not be court-martialed by military authorities. Cooke, 12 M.J. at 342. Finding that an accused "need not gamble on the integrity of prosecutorial authorities in the military justice system," the lead opinion held that Cooke's due process rights had been violated. Id. at 343.

Chief Judge Everett's concurring opinion relied upon the immunity provisions of paragraph 68h of the 1969 MCM. He concluded that while the staff judge advocate did not have authority to grant immunity, the subsequent actions of the GCMCA ratified his grant of immunity. Id. at 354 (Everett, C.J., concurring). The dissent of Judge Cook found that only the GCMCA had the power to grant immunity and it was not enough that the accused may have reasonably believed that he had been granted immunity. Id. at 365 (Cook, J., dissenting). While the lead opinion hinted at the concept of de facto immunity, it was not specifically raised or discussed in the opinion.

---

Chief Judge Everett concurred and Judge Cook dissented.
Paragraph 68h authorized a GCMCA to grant transactional
immunity.

United States v. McKeel, No. 05-0363/NA

    Rule for Courts-Martial 704, Manual for Courts-Martial, United States (1984 ed.) (1984 MCM), recognized both transactional and testimonial immunity and provided that immunity could only be granted by a GCMCA.[5]  The 1984 MCM, in the discussion to R.C.M. 704(c), recognized for the first time the concept of de facto immunity.  Case law too began to explicitly recognize the concept.  In United States v. Churnovic, 22 M.J. 401, 402-03 (C.M.A. 1986), a chief petty officer informed a crew member that he would not be punished if he gave information about or turned in drugs.  The court stated:  "if he was promised immunity from prosecution for possessing hashish in return for revealing its location and if he provided the requested information, he is entitled to the benefit of that promise."  Id. at 407.  In United States v. Kimble, 33 M.J. 284, 289-90 (C.M.A. 1991), the court held that a promise made by a SPCMCA not to prosecute if Kimble completed a treatment program for child abusers constituted a grant of transactional immunity. Both of these cases recognized the concept of de facto immunity where a promise not to prosecute was made by someone with apparent authority.

    In Cunningham v. Gilevich, 36 M.J. 94, 100-01 (C.M.A. 1992), the court recognized that it had applied some type of de

_____

[5] Only minor changes, none pertinent to this discussion, have been made to Rule for Courts-Martial 704 since the adoption of the 1984 MCM.

6

facto immunity since Cooke, but found that the petitioners in that case had not established that the officer who offered the immunity had done so with apparent authority.[6] In Samples v. Vest, 38 M.J. 482, 486-87 (C.M.A. 1994) the court again recognized the concept of de facto immunity, but held it was not applicable where the appellant had not shown that he had been misled.

From these cases it is clear that de facto immunity is a well-established principle of military law despite the clear language of R.C.M. 704(c).[7] What is not so clear is the relationship to "detrimental reliance" and how de facto immunity is applied to transactional immunity as opposed to testimonial immunity -- two very different concepts.

Rule for Courts-Martial 704(a) recognizes two types of immunity: transactional immunity, which bars future prosecutions, and testimonial immunity, which allows future prosecutions but bars the use of immunized testimony at the trial. De facto immunity has different applications to these different types of immunity. If there is a finding of de facto

---

[6] Concluding that there was no transactional immunity, the court went on to hold that under the "unlawful influence" provision of Article 31(d), the Government had the burden of establishing that any evidence used to prosecute the petitioner was independent of testimony derived from the immunity offer. Cunningham v. Gilevich, 36 M.J. 94, 102 (C.M.A. 1992).
[7] Only a GCMCA authority may grant immunity, and may do so only in accordance with this rule.

transactional immunity, then there can be no prosecution, as the appellant is entitled to have the promise of transactional immunity enforced. Samples, 38 M.J. at 487. The issue of detrimental reliance and the requirement for independent evidence to support a subsequent prosecution do not arise because a grant of transactional immunity means that there will be no subsequent prosecution.

Where there is a finding of de facto testimonial immunity, the Government can proceed with a prosecution but has the burden of establishing that all evidence was obtained independently from the immunized testimony. Kastigar v. United States, 406 U.S. 441, 461-62 (1972). If, however, there is a finding that there is no de facto testimonial immunity, the court will go on to examine whether the statements or evidence derived from the alleged immunity process are otherwise admissible. Cunningham, 36 M.J. at 101-02 (unlawful inducements and influences in obtaining statements may nonetheless give rise to Article 31, UCMJ, 10 U.S.C. § 831 (2000), issues).

I agree with the first two criteria suggested by the majority for determining whether de facto immunity exists: an accused must honestly and reasonably believe that (1) a promise of immunity was made; and (2) the promise was made by a person with apparent authority to do so. Jones, 52 M.J. at 65; Samples, 38 M.J. at 487. In this case there is no dispute that

CPO Leiker promised McKeel immunity if he accepted nonjudicial punishment under Article 15 and waived his right to an administrative discharge board -- both of which he did.  McKeel was a young seaman attending his initial training.  Chief Petty Officer Leiker was the chief legal officer and was the face of the naval military justice system to both McKeel and his parents.  The undisputed testimony discloses that CPO Leiker held himself out to have the authority to promise that McKeel would not be prosecuted if he undertook the required action.  A reasonable observer would conclude that a new E-2 would not question the authority of a chief petty officer who is also the highest ranking legal officer in his unit.  The military judge erred in concluding that CPO Leiker did not have the apparent authority to grant immunity.  That finding is not supported by the evidence, is directly contrary to the undisputed testimony, and conflicts with other findings by the military judge.

I disagree with the majority that detrimental reliance has any place in the de facto immunity analysis.  Detrimental reliance in this context appears to have migrated from R.C.M. 705(d)(4)(B), which lists the conditions under which a convening authority can withdraw from a pretrial agreement.  Among these conditions is a withdrawal before an accused begins performance of promises contained in the agreement.  This condition came from Shepardson v. Roberts, which held that a convening

9

authority will be bound to a pretrial agreement if the accused has detrimentally relied on the agreement.  14 M.J. 354, 358 (C.M.A. 1983).

Rule for Courts-Martial 705 is not applicable to this case, nor will it be applicable in most cases involving a grant of de facto immunity.  There was no pretrial agreement between McKeel and CPO Leiker or McKeel and the SPCMCA because McKeel was not being referred for a court-martial.[8]  See R.C.M. 705(b) (concerning the nature of a pretrial agreement).  There was a promise from CPO Leiker to McKeel that he would not be prosecuted if he accepted nonjudicial punishment under Article 15 and waived an administrative discharge board, but that does not rise to the level of a pretrial agreement.  Rather, upon fulfillment of the two conditions imposed by CPO Leiker's promise, McKeel was entitled to enforcement of this de facto transactional immunity.  And where the promise constitutes de facto transactional immunity it is not adequate simply to ensure immunized statements are not used in a subsequent prosecution, the very existence of which violates the terms of the immunity.

---

[8] As noted in United States v. Jones, 52 M.J. 60, 65 (C.A.A.F. 1999), "A de facto grant of immunity arises when there is an after-the-fact determination based on a promise by a person with apparent authority to make it that the individual will not be prosecuted."  With an "after-the-fact" determination, rarely, if ever, will a formal pretrial agreement be involved.

I conclude that CPO Leiker, an officer with apparent authority, promised McKeel transactional immunity if he accepted nonjudicial punishment under Article 15 and waived his right to an administrative discharge board.  McKeel did both and now it is time for the Government to honor its promise.  The importance in enforcing such grants of immunity was emphasized by Chief Judge Everett in Cooke as follows:

> where, as here, the stakes are high, a suspect who has been asked for information -- and his lawyer -- must know that a promise of immunity which is given by a staff judge advocate possessing all the indicia of apparent authority and is reasonably relied on by the suspect will thereafter be judicially enforced.  Otherwise, lips will remain sealed when it is vital to national security that they be unlocked.  Although in this case an officer who may well have been a spy and traitor will escape military prosecution, it still is in the national interest that the promise of immunity be enforced.

Cooke, 12 M.J. at 358 (Everett, C.J., concurring) (footnotes omitted).

Those involved in government understand the numerous governmental departments and levels of authority; but to the average citizen, the government is the government and the left hand should not be able to take away what the right hand has

properly granted.[9]  I would therefore reverse the findings and sentence and dismiss the charges.

---

[9] "I join Judge Fletcher in concluding that the Government cannot improve its legal position because its left hand did not know what its right hand was doing."  Cooke v. Orser, 12 M.J. 335, 354 (C.M.A. 1982) (Everett, C.J., concurring).